# 24-2133

### In The United States Court of Appeals
### For The Second Circuit

—————————————————

Aguila Energia e Participações Ltda.

*Petitioner-Appellant,*

v.

JPMorgan Chase & Co.

*Respondent-Appellee*

—————————————————

On Appeal from the United States District Court
for the Southern District of New York

—————————————————

## OPENING BRIEF FOR THE PETITIONER-APPELLANT

—————————————————

Gabriela M.B. Scanlon
MB Scanlon PLLC
4301 50th Street NW
Washington, DC 20016
Tel. (215) 459-1171

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................i

TABLE OF AUTHORITIES ...................................................... iv

INTRODUCTION ..................................................................... 1

JURISDICTIONAL STATEMENT ............................................. 3

ISSUES PRESENTED FOR REVIEW ...................................... 4

STANDARD OF REVIEW ....................................................... 5

STATEMENT OF THE CASE .................................................. 6

FACTUAL BACKGROUND...................................................... 7

    A.    Background on the Dispute ........................................ 8

    B.    The Contemplated Proceedings .................................. 9

        1.  The Civil Lawsuit.................................................. 10

        2.  The TCU Complaint ............................................. 10

        3.  The Criminal Complaint ...................................... 11

    C.    The *Ex Parte* Section 1782 Application ..................... 12

    D.    The First Report & Recommendation ....................... 13

    E.    Aguila's Objections to the First R&R........................ 14

    F.    The Court's Order that JPMorgan Respond to Aguila's Objections to the First R&R, and JPMorgan's Appearance in this Case (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the First Time)........................................................ 15

G.    Aguila Serves the Subpoena and JPMorgan Moves to Quash (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the Second Time) .................................................................. 16

H.    Aguila's Opposition to the Motion to Quash ........................... 17

I.    JPMorgan's Reply in Support of Its Motion to Quash (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the Third Time) ............................................................................... 18

J.    The Second Report and Recommendation ................................ 20

K.    Aguila's Objections to the Second Report and Recommendation .................................................................. 22

L.    JPMorgan's Response to Aguila's Objections to the Second R&R (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the Fourth Time) ............................................................................. 23

M.    The Hearing on Aguila's Objections to the Second R&R (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the Fifth Time) ................................................................................. 23

N.    Aguila's Letter Following the Hearing on Aguila's Objections to the Second R&R .................................................. 26

O.    JPMorgan's Response to Aguila's Letter Following the Hearing on Aguila's Objections to the Second R&R (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the Sixth Time) ................................................................................. 27

P.    The District Court's Order Granting the Motion to Quash ......... 28

SUMMARY OF THE ARGUMENT ........................................................ 29

ARGUMENT ..................................................................................... 32

A.  The District Court Committed Reversible Error By Imposing An Additional and Unwarranted Statutory Requirement on Section 1782 – that an Applicant Prove that the Respondent Has Possession, Custody, or Control of the Documents Sought. .................................................. 35

B.  The District Court Made Clearly Erroneous Findings of Fact When it Concluded that Aguila Failed to Carry its Burden of Demonstrating that JPMorgan Has Possession, Custody, or Control of the Documents Sought. ........................................... 39

C.  The District Court Committed Reversible Error with Regard to the Third *Intel* Factor............................................. 43

D.  The District Court Committed Reversible Error with Regard to the Fourth *Intel* Factor.......................................... 44

E.  The District Court Correctly Concluded that First and Second *Intel* Factors Weigh in Favor of Aguila.......................... 46

F.  The District Court Correctly Concluded that Aguila's Application Satisfied the Statutory Requirements of Section 1782. .................................................................. 47

CONCLUSION........................................................ 48

# TABLE OF AUTHORITIES

**Cases**

*Ayyash v. Crowe Horwath LLP.*,
  2018 WL 2976017 (S.D.N.Y. June 13, 2018)............................................. 47

*Brandi-Dohrn v. IKB Deutsche Industriebank AG.*,
673 F.3d 76, 80 (2d Cir. 2012) ........................................ 32, 34, 35

*Caterpillar*,
2023 WL 6938264, at *3............................................................... 45

*Chevron Corp. v. Berlinger*,
629 F.3d 297, 306 (2d Cir. 2011) ................................................ 4

*Correios*,
2022 WL 4955312, at *8................................................................ 46

*Deposit Ins. Agency*,
2018 WL 3536083, at *9................................................................ 47

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095, 1099-1100 (2d Cir. 1995)....................................35, 44

*Gianoli Aldunate*
3 F.3d at 59........................................................................... 36

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121, 128 (2d Cir. 2017).......................................... 5, 33

*In re Apotex Inc.*,
No. M12-160, 2009 WL 618243, at *4 (S.D.N.Y. Mar. 9, 2009).................. 48

*In re Application of Bloomfield Inv. Res. Corp.*,
315 F.R.D. 165, 168 (S.D.N.Y. 2016) ........................................ 49

*In re Application of Johannes Roessner*,
2021 WL 5042861, at *3 (S.D.N.Y. Oct. 29, 2021) ....................... 44

iv

*In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*
2024 WL 555780, at *14 (S.D.N.Y. Jan. 18, 2024) ...................................... 38

*In re Bouka*,
637 F. Supp. 3d 74, 90 (S.D.N.Y. 2022) .................................................43, 44

*In re Boustany*,
2024 WL 473569 (S.D.N.Y. Feb. 7, 2024) .................................................. 38

*In re Catalyst Managerial Servs.*,
680 F. App'x at 39 ................................................................................... 46

*In re Chevron Corp.*,
633 F.3d. 153, 163 (3d Cir.2011) ............................................................. 47

*In re Christen Sveaas,*
249 F.R.D. 96, 107 (S.D.N.Y. 2008) ......................................................... 46

*In re Ex Parte Application of Eni S.p.A,*
2021 WL 1063390 (D. Del. Mar. 19, 2021) ............................................... 44

*In re Ex Parte Abdalla,*
2021 WL 168469 (S.D.N.Y. Jan. 19, 2021) ............................................... 47

*In re Edelman*
295 F.3d 171, 179-80 (2d Cir. 2002) ........................................................ 33

*In re FourWorld Event Opportunities Fund, L.P.,*
No. 22-MC-330 (JPO), 2023 WL 3375140 (S.D.N.Y. May 11, 2023) ........... 38

*In re Liverpool Ltd. P'shi,p*
No. 21-MC-392 (AJN), 2021 WL 5605044 (S.D.N.Y. Nov. 24, 2021) .......... 39

*In re Mun*
No. 22MC163 (DLC), 2022 WL 17718815 (S.D.N.Y. Dec. 15, 2022) .......... 39

*In re Porsche Automobil Holding SE.,*
2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016)....................................... 33

*In re Tiberius Grp.,*

No. 19-MC-467 (VSB), 2020 WL 1140784 (S.D.N.Y. Mar. 6, 2020)............ 46

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ...................................................................... passim

*Irons v. Karcerski*,
74 F.3d 1262, 1264 (D.C. Cir. 1995) ......................................................... 46

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*
27 F.4th 136, 147 (2d Cir. 2022).............................................................. 5, 35

*Kirshner v. Klemons*,
No. 99 Civ. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May
  19, 2005) .....................................................................................46, 47

*Lindsey v. Butler*,
No. 11-cv-9102, 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017) ............ 46

*Mangouras*,
980 F.3d at 98 .......................................................................................... 43

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) ...................................................................*passim*

*Michanczyk v. Metro. Life Ins. Co.*,
No. 05 Civ.1903, 2007 WL 926911, at *2 (D.Conn. Mar. 26, 2007).............. 48

*Ssangyong Corp. v. Vida Shoes Int'l, Inc.*,
No. 03-CV-5014, 2004 WL 1125659, at *3 (S.D.N.Y. May 20, 2004) ........... 42

*Shcherbakovskiy v. Da Capo Al Fine, Ltd*,
490 F.3d 130, 138 (2d Cir. 2007)............................................................... 36

**Statutes**

28 U.S.C. § 1291 ........................................................................................4

28 U.S.C. § 1331 ........................................................................................3

28 U.S.C. § 1782 .............................................................................. passim

vi

Fed. R. App. P. 4(a)(1)(A) .................................................................... 4

Fed. R. Civ. P. 26 ............................................................................... 38

Fed. R. Civ. P. 34(a)(1) ...................................................................... 37

Fed. R. Civ. P. 37(a)(3)(B) ................................................................. 37

SDNY L.R. 7.1(a) ............................................................................... 37

## INTRODUCTION

The district court's order granting Appellee JPMorgan Chase & Co.'s ("JPMorgan") motion to quash must be reversed because it relies on a fundamental error of law that goes to the heart of discovery in this country—not only in Section 1782 proceedings but in all cases. The district court held that a party who wishes to pursue discovery must first prove—as a threshold matter—that its opponent has possession, custody, or control of the specific material sought before the party in receipt of a discovery request is even required to respond to it. Such a restrictive rule may exist in most of the world, but it does not exist in the United States, where discovery is liberally granted. Indeed, the reason why Section 1782 was adopted and amended over the past 75 years was to offer American-style discovery to foreign litigants for use abroad in the hope of inspiring foreign countries to reciprocate. The district court's ruling runs directly counter to that goal and must be reversed.

To be sure, a subpoena recipient cannot be required to produce documents that are not in its possession, custody, or control. But such a subpoena recipient must first be required to respond to the subpoena and squarely assert that it does not have possession, custody, or control of the material sought. The party seeking discovery must then have the opportunity to test that assertion, typically through a motion to compel. The determination of that motion must then be

1

based on actual evidence and argument set forth by each party. But that is not what happened here.

Here, the district court granted JPMorgan's motion to quash without ever requiring JPMorgan to respond to the subpoena served on it. Indeed, JPMorgan was not directed to and did not submit one single shred of evidence showing that JPMorgan does not have possession, custody, or control of the discovery sought. Instead, the district court improperly imposed a nonexistent burden on Appellant Aguila Energia e Participações Ltda. ("Aguila") to prove that JPMorgan does have possession, custody, or control of the material before JPMorgan was required to respond to the subpoena or take any position on the matter. The district court then ruled that Aguila failed to meet this nonexistent threshold burden, even though Aguila submitted ample evidence showing that JPMorgan does, in fact, have possession, custody or control over the discovery sought. Perhaps most telling of all: JPMorgan was given at least **six** chances to squarely assert that it does not have possession, custody, or control over the evidence sought, and it never did so. The only logical explanation is that JPMorgan does have possession, custody, or control over the documents, and it is hiding behind the improper threshold burden erected by the district court. Indeed, if JPMorgan did not have possession, custody, or control of the discovery sought, it would have submitted a one-paragraph affidavit saying so,

avoiding the hundreds of pages of briefing, affidavits, and other filings in this case.

The district court's improper ruling is contrary to American discovery law and, if accepted, would only reward recalcitrant litigants from complying with their discovery obligations and turn discovery into a shell game. The district court's order must be reversed.

Finally, the district court abused its discretion in finding that two of the four discretionary factors announced in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004), weigh against Aguila. In reaching these erroneous conclusions, the district court announced the right legal standard, but then failed to apply it. Instead, the district court incorrectly found that the third and fourth *Intel* factors weigh against Aguila because Aguila did not meet the nonexistent burden of proving that JPMorgan has possession, custody, or control of the discovery sought. An application of the proper legal standards shows that the two *Intel* factors weigh in favor of Aguila, not against it. The district court's order must therefore be reversed, and the district court ordered to require JPMorgan to respond to the subpoena.

## JURISDICTIONAL STATEMENT

Aguila brought this action under 28 U.S.C. § 1782. Consequently, the district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1782.

On July 10, 2024, the district court entered an order granting the motion to quash filed by JPMorgan. (SPA1.) Aguila's notice of appeal was timely filed on August 08, 2024, in accordance with Federal Rule of Appellate Procedure 4(a)(1)(A). (A883.) This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 because the appeal is from an order that ended the Section 1782 proceeding below. *See Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011) (An "order granting or denying discovery that constitutes the final resolution of a petition to take discovery in aid of a foreign proceeding under 28 U.S.C. § 1782 … is the final adjudication of the § 1782 application" and "immediately appealable under § 1291".).

## ISSUES PRESENTED FOR REVIEW

Whether the district court erred as a matter of law by denying Aguila's Section 1782 application and quashing the subpoena on the ground that Aguila failed to satisfy its threshold burden of proving that JPMorgan has possession, custody, or control of the evidence sought, where (a) Section 1782 and the Federal Rules of Civil Procedure do not require a threshold showing of possession, custody, or control before a party must respond to discovery requests, (b) JPMorgan never responded to the subpoena or otherwise asserted that it does not have possession, custody, or control of the evidence sought, (c) JPMorgan never provided any evidence showing that it does not have

4

possession, custody, or control of the evidence sought, and, (d) Aguila provided evidence that JPMorgan does have possession, custody, or control of the evidence sought.

Whether the district court abused its discretion in finding that the third and fourth *Intel* discretionary factors weigh against Aguila, where the district court (a) announced the correct legal standards for each factor, (b) initially applied them correctly in rejecting JPMorgan's arguments on each factor, but then (c) disregarded the legal standards in finding that the factors weigh against Aguila because it did not meet the nonexistent burden of proving—as a threshold matter—that JPMorgan has possession, custody, or control of the evidence sought.

## STANDARD OF REVIEW

A district court's interpretation of Section 1782, rather than its discretion to grant or deny discovery under the statute, is reviewed de novo. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017).

A district court's application of the factors set forth in *Intel* is reviewed for an abuse of discretion. *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 147 (2d Cir. 2022). An abuse of discretion occurs if the district court "(1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a

conclusion that . . . cannot be located within the range of permissible decisions." *Id.*

## STATEMENT OF THE CASE

On August 22, 2022, Aguila filed an *ex parte* application pursuant to Section 1782 to take discovery in the Southern District of New York from JPMorgan for use in three contemplated proceedings in Brazil. (A10.)

On August 22, 2023, the magistrate judge issued a Report and Recommendation, recommending denying the Application, to which Aguila objected on September 5, 2023. (A300.)

On September 21, 2023, the district court allowed Aguila to serve a subpoena on JPMorgan without ruling on Aguila's Application. (A331.)

On October 10, 2023, JPMorgan moved to quash the subpoena. (A332.) On October 30, 2023, Aguila opposed, (A466), and on October 30, 2023, JPMorgan replied. (A778.) The district court again referred the case to the magistrate judge.

On February 29, 2024, the magistrate Judge issued a Second Report and Recommendation, recommending, again, that the Application be denied and the motion to quash granted. (SPA1-25.) Aguila timely filed objections. (A822.)

On June 24, 2024, the parties appeared for in an in-person hearing on Aguila's objections to the magistrate Judge's Second Report and Recommendation. (A859.) At and after the hearing, the district court requested that Aguila and JPMorgan submit letters regarding their respective positions, which the parties did. (A860; A861; A880; A881.)

On July 10, 2024, the district court issued a Memorandum Opinion and Order, adopting the Second Report and Recommendation in its entirety. (SPA1-11.) The district court also concluded in a separate opinion that Aguila had "failed to meet its burden of establishing that JPMorgan Chase has possession, custody, or control of the documents." (SPA10.) The district court accordingly granted JPMorgan's motion to quash. (SPA11.)

## FACTUAL BACKGROUND

This appeal arises from Aguila's efforts to seek limited discovery from JPMorgan for use in three contemplated proceedings in Brazil to support its claims that Petróleo Brasileiro S.A. ("Petrobras") and Banco J.P. Morgan S.A. ("JPMorgan Brazil") engaged in fraud relating to aborted auctions of a large onshore oil and gas project known as the "Bahia Terra Cluster.". The auctions were administered by JPMorgan Brazil, acting as Petrobras's financial advisor. (A8-43.)

## A.     Background on the Dispute

Petrobras is the largest company in Latin America, and one of the world's largest producers of oil and gas.  Petrobras is a publicly traded company controlled by the Brazilian state.  Petrobras is the owner of the Bahia Terra Cluster, which comprises 28 onshore oil and gas concessions and associated facilities in the Brazilian state of Bahia.  In 2018, a Brazilian presidential decree approved Petrobras's divestment plan to improve Petrobras's capital structure by selling ongoing operations to the highest bidders through public auctions.  (A17; A21.)

Aguila, a company focused on developing oil and gas projects, participated in certain auctions of Petrobras's assets in the Bahia Terra Cluster.  (A18.)  On two separate occasions, Aguila submitted the highest bid, and JPMorgan Brazil, acting on behalf of Petrobras, declared Aguila the winner.  (A23.)  Both times, however, JPMorgan followed up by making arbitrary, varying demands of Aguila with unreasonably short deadlines, which ultimately resulted in Aguila being unfairly disqualified from the auction.  (A23.)  Aguila's e-mail communications with JPMorgan Brazil all occurred via e-mails sent to or from a "@jpmorgan.com" or "@jpmchase.com" email address, and all emails were in English.  (A23.)

8

As one example, on March 23, 2022, Aguila submitted a binding offer that was approximately US$200 million higher than the second-best offer. JPMorgan Brazil declared that Aguila's bid was the highest one. (A23.) On a Microsoft Teams meeting a week later (March 30, 2022), representatives of Petrobras and JPMorgan Brazil gave representatives of Aguila five business days to produce certain additional financial documents. Just twelve hours later, however, at precisely 9:32 p.m., JPMorgan Brazil informed Aguila that a final and nonnegotiable deadline to submit any additional documentation had been set for the very next day, Thursday, March 31, 2022, at 12:00 p.m. When Aguila was unable to meet this unfairly shortened deadline, JPMorgan Brazil informed Aguila that it had failed to timely submit required documentation, effectively disqualifying Aguila from the auction process. (A23-24.)

Following Aguila's disqualification, JPMorgan Brazil and Petrobras seemed poised to award the assets in question to two other Brazilian companies that had submitted a joint bid in an aggregate amount substantially smaller than Aguila's bid. (A26.) Aguila believes JPMorgan Brazil's heavy-handed tactics were a purposeful effort to favor those companies at Aguila's expense.

## B.    The Contemplated Proceedings

Aguila intends to use the discovery sought in its Section 1782 Application in three contemplated proceedings in Brazil. First, Aguila is contemplating a

9

civil lawsuit against JPMorgan Brazil in Brazilian state court to hold the bank liable for Aguila's disqualification. Second, Aguila is contemplating a formal administrative complaint with the Brazilian General Accounting Office (the "TCU") seeking to call the administrative body's attention to improper and illegal conduct of JPMorgan Brazil and Petrobras in the course of a public auction process. Third, Aguila is contemplating a formal criminal complaint with the Brazilian Federal Prosecutor's Office (the "MPF") regarding a potential bribery scheme orchestrated by JPMorgan Brazil and Petrobras. (A28-30.)

### 1.    The Civil Lawsuit

As explained in its Application, Aguila is contemplating a civil lawsuit under Article 927 of the Brazilian Civil Code, Law no. 10,406/2002, which is the general rule for civil liability under Brazilian civil law. (A28.) Article 927 states that the person who causes damage to another must repair the damage. (*Id.*) Such a lawsuit would seek damages from Petrobras and JPMorgan Brazil; it would not challenge decisions made during the divestment process of the Bahia Terra Cluster. (A265, at ¶ 26; A271-272, at ¶¶ 48-50.)

### 2.    The TCU Complaint

As further explained in its Application, Aguila is also contemplating a formal administrative complaint with the TCU seeking to call the administrative

10

body's attention to improper and illegal conduct of JPMorgan Brazil and Petrobras in the course of the public auction process.  (A28-30.)

The Constitution of Brazil, through articles 70 and 71, delegates powers to the TCU to investigate and review any concerns related to direct and indirect administration.  Petrobras is subject to the TCU's general jurisdiction because the Bahia Terra Cluster is one of the largest assets of Petrobras, and, therefore, its sale process must undergo strict scrutiny.  (A269, at ¶ 38.)  The evidence Aguila seeks is crucial to show the TCU that Petrobras, aided and abetted by JPMorgan Brazil, did not follow the constitutional principles under Brazilian law, especially by not acting efficiently and defending the public interest in securing the best bid offer for such a relevant infrastructure project for the country of Brazil.  (A269, at ¶ 40.)

### 3.    The Criminal Complaint

Aguila is also contemplating a formal criminal complaint with the MPF regarding a potential bribery scheme orchestrated by JPMorgan Brazil and Petrobras.  (A28-30.)

With respect to the criminal complaint, once in possession of any information that indicates a crime under Brazilian law, the MPF may initiate, *ex officio*, a criminal investigation procedure; or it may request a police investigation to be conducted by a police delegate.  (A270, at ¶ 43.)  The evidence

Aguila seeks is relevant to investigate whether Petrobras, aided and abetted by JPMorgan Brazil, committed any crime of fraud and/or any other criminal act during the bid process, mainly related to the manipulation of prices to justify Aguila's disqualification.

### C.    The *Ex Parte* Section 1782 Application

On August 22, 2022, Aguila filed an *ex parte* application for an order under 28 U.S.C. § 1782 permitting it to serve a subpoena on JPMorgan to produce documents.  (A8-43.)  The Section 1782 Application sought communications exchanged concerning the Bahia Terra Cluster, including those under the "@jpmorgan.com" and "@jpmchase.com" domains, and a recording of the Teams meeting that occurred on March 30, 2022.  (A286-299.)

The Section 1782 Application satisfied the three statutory requirements. Aguila is an interested person; JPMorgan is found in the Southern District of New York; and the requested discovery is "for use" in the Brazilian contemplated proceedings.  (A30-36.)

In addition, Aguila showed that the four discretionary factors set forth in *Intel* weigh in favor of granting the Section 1782 Application.  JPMorgan would not be a party to the contemplated proceedings; the Brazilian courts and authorities would be receptive to the discovery sought in the Section 1782 Application; Aguila seeks the discovery in good faith; granting the Section 1782

12

Application would not circumvent foreign proof-gathering restrictions; and the discovery requested is not unduly intrusive or burdensome, but limited to a short timeframe and a small number of documents. (A36-41.)

The Section 1782 Application was referred to a magistrate judge.

### D.    The First Report & Recommendation

On August 22, 2023, one year after the Section 1782 Application was filed, the magistrate judge issued a Report & Recommendation (the "First R&R").

The First R&R concluded that Aguila met the three statutory requirements under 28 U.S.C. § 1782(a). (A306.)

Before weighing the *Intel* discretionary factors, however, the First R&R concluded that the Section 1782 Application should be denied "because Aguila has not met its burden of establishing that JPMorgan has possession, custody, or control over the requested discovery." (A308.) The magistrate judge ruled solely based on Aguila's submissions, given that the application was *ex parte* and that JPMorgan was not notified of the application.

Finally, the First R&R stated that, if the court were to weigh the *Intel* factors, only two weighed in Aguila's favor. (A309.) The first *Intel* factor weighed in favor of Aguila because JPMorgan would not be a participant in the contemplated proceedings. (A309.) The second *Intel* factor weighed in Aguila's favor because there is no evidence that the Brazilian courts or authorities would

13

not be receptive to the Section 1782 discovery. (A310.) The third *Intel* factor, however, weighed against Aguila because Aguila was seeking discovery from JPMorgan about conduct involving JPMorgan Brazil and Petrobras in a Brazilian transaction, without demonstrating that JPMorgan had a connection to the transaction or exercised sufficient control over JPMorgan Brazil. (A311.) Finally, the magistrate judge weighed the fourth *Intel* factor against Aguila on the same ground: Aguila's failure to prove that JPMorgan had possession, custody, or control over the documents sought showed that the requests were unduly burdensome and intrusive. (A312.)

### E.    Aguila's Objections to the First R&R

On September 5, 2023, Aguila objected to the First R&R. (A314.) Aguila argued that the First R&R's conclusion is incorrect because the issue of whether JPMorgan has possession, custody, or control of the requested documents depends on knowledge, facts, and documents that are solely in the possession of JPMorgan. Additionally, Aguila contended that, although it has no obligation under Section 1782 to show that JPMorgan has possession, custody, or control over the requested discovery, Aguila has submitted documents showing that JPMorgan does—or at least is likely to—have such possession, custody, or control. For example, Aguila submitted email correspondence to and from "@jpmorgan.com," where the disclaimers at the bottom link to JPMorgan's

14

U.S. web site.  Aguila also submitted two media articles that linked JPMorgan to a bribery scheme involving Petrobras.  (A314-325.)

**F.      The Court's Order that JPMorgan Respond to Aguila's Objections to the First R&R, and JPMorgan's Appearance in this Case (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the <u>First</u> Time)**

On September 21, 2023, the district court ordered JPMorgan to respond to Aguila's objections no later than September 28, 2023.  (A326.)  On September 25, 2023, JPMorgan filed a letter with the district court simply stating that it agreed with the report and recommendation because Aguila has not met its burden to establish that JPMorgan has possession, custody, or control of the relevant evidence.  (A327.)  **<u>Nowhere in the letter did JPMorgan assert, let alone offer any evidence showing, that it did not have possession, custody, or control of the discovery sought.</u>**

The district court held oral argument on September 28, 2023.  (A328.) During oral argument, the district judge stated that, if JPMorgan responded to Aguila's objections, "one of the likely responses would be, they don't have the documents or the documents are not in their possession and control, in which case there would then have to be a further response from the applicant."  (A793-794.)  The district court ultimately decided to allow Aguila to serve the subpoena

on JPMorgan, which could then respond to the subpoena or move to quash. (*Id.*)

### G. Aguila Serves the Subpoena and JPMorgan Moves to Quash (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the <u>Second</u> Time)

Aguila promptly served JPMorgan with the subpoena, and JPMorgan moved to quash. (A333.) JPMorgan argued that Aguila failed to meet the statutory requirements of Section 1782 and that the *Intel* discretionary factors weighed against Aguila. (A338-359.) In addition, JPMorgan argued that the Section 1782 Application should be denied because Aguila failed to prove that JPMorgan has possession, custody, or control of the documents sought. (A349-353.) <u>**Nowhere in the motion to quash did JPMorgan assert, let alone offer any evidence showing, that it did not have possession, custody, or control of the discovery sought.**</u>

JPMorgan simply stated that the documents Aguila seeks are actually documents of JPMorgan's subsidiary, JPMorgan Brazil, and then cites a string of decisions from the U.S. District Court for the Southern District of New York that have found, in other instances, that documents in the possession of JPMorgan's subsidiaries are not in the possession, custody, or control of JPMorgan. Notably, JPMorgan does not cite any opinions from U.S. Court of Appeals for the Second Circuit for this proposition. (A351-353.)

16

## H.    Aguila's Opposition to the Motion to Quash

On October 30, 2023, Aguila opposed JPMorgan's motion to quash, arguing that it satisfied the statutory requirement of Section 1782 and that the *Intel* discretionary factors weigh in favor of Aguila.  (A466-454.)

With regard to possession, custody, or control of the documents, Aguila specified that it seeks documents that are in the possession, custody, or control of JPMorgan, not JPMorgan's subsidiary in Brazil.  (A470.)  Aguila also submitted additional evidence showing that the documents are, in fact, in the possession, custody, or control of JPMorgan.  (A503-777.)  That evidence included, among other things, that (i) all communications with Aguila (including those copying Petrobras) were in English, and (ii) all communications with Aguila were handled through @jpmorgan.com and @jpmchase.com email domains with signature disclaimers that link to the jpmorgan.com website (*i.e.,* JPMorgan's website), and official letters and emails were signed as "J.P. Morgan" or "J.P. Morgan Team," not specifying which entity was in charge of such communication.  (A65-66.)

In addition, Aguila submitted a declaration and report from a forensic expert who analyzed the emails sent from the "@jpmorgan.com" and "@jpmchase.com" domains to Aguila regarding the Bahia Terra Cluster auction.  (A503-777.)  The report concluded that the Internet Service Provider

17

("ISP") for the emails was JPMorgan. (A510-520.) The report further concluded that the "Source Server" for the domain "jpmchase.net," from which the emails originated, belonged to JPMorgan Chase Bank, National Association ("JPMorgan Chase, NA"). (A509.) Finally, the report concluded that the servers were located in New York, NY, not Brazil. (A511.) In addition, the IP addresses of the originating servers for the emails was New York, NY. (A510-520.)

Aguila argued that this material constituted sufficient evidence to show that JPMorgan has possession, custody, or control of the documents. (A470; A472). In addition, Aguila reiterated that JPMorgan "has not even asserted that it does not have possession, custody, or control over the discovery." (A473; A470 ("JPMorgan USA has never once actually stated that it does not have possession, custody, or control over the material.")

### I. JPMorgan's Reply in Support of Its Motion to Quash (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the <u>Third</u> Time)

On November 6, 2023, JPMorgan filed a reply in support of its motion to quash, arguing that Aguila failed to satisfy that the statutory requirement of Section 1782 and that the four *Intel* factors weighed against Aguila. (A781-791.)

In addition, JPMorgan argued that Aguila failed to prove that JPMorgan has possession, custody, or control of the document. JPMorgan noted that "it

is a holding company with no operations—i.e., it has no employees who would have worked on the transaction and no relevant documents." (A787.) Notably, JPMorgan did not include an affidavit or other evidence supporting this statement, particularly the portion about having no operations. (*Id.*) JPMorgan then contended that it "is Aguila's burden to demonstrate otherwise, and as briefed in detail, Aguila has failed to meet this burden." (*Id.*)

JPMorgan argued that the forensic report shows nothing because it "makes clear that the 'domain jpmchase.net belongs to the organization *JPMorgan Chase Bank, National Association*,'" which "is not JPMorgan. (*Id.* (emphasis in original).) To support this point, JPMorgan references its original motion to quash, which attaches excerpts of JPMorgan's Form 10-K. (*Id.*) That Form 10-K notes that JPMorgan is publicly traded on the New York Stock Exchange, and that JPMorgan Chase Bank, NA, is JPMorgan's wholly owned "national bank subsidiary." (A366-367.) Nowhere does JPMorgan assert that it does not have control over JPMorgan Chase Bank, NA. (A781-791.)

Indeed, **nowhere in the reply does JPMorgan assert, let alone offer any evidence showing, that it did not have possession, custody, or control of the discovery sought.** (A781-791.)

Instead, the reply attacks the forensic report collaterally, arguing that it is defective because the accompanying declaration is not signed and because the

expert was not properly qualified to opine about who owned the server. (A788.) The reply did not address the fact that the ISP for the emails was JPMorgan, or that the IP addresses of the originating servers for the emails was New York, NY, not Brazil. (A787-788.)

### J.    The Second Report and Recommendation

On February 29, 2024, the magistrate judge issued a second Report & Recommendation (the "Second R&R") recommending (again) that JPMorgan's motion to quash be granted. In so doing, the magistrate judge relied on the very same reasoning as the First R&R. (SPA1-24.)

Like the First R&R, the Second R&R concluded that Aguila satisfied the three statutory requirements under Section 1782, but it recommended denying the Application because Aguila had not established that JPMorgan has possession, custody, or control of the documents sought. (SPA19.) The magistrate judge found that Aguila seeks documents "solely relating to the alleged activities and communications of individuals operating on behalf of [JPMorgan's] subsidiary," but that a "parent-subsidiary relationship . . .is not dispositive of control over documents." (SPA15.) The magistrate then cited the same string of district court cases that have found, in other instances, that documents in the possession of JPMorgan's subsidiaries are not in the possession, custody, or control of JPMorgan. (SPA15-19; A349-352.)

20

Regarding the forensic report, the Second R&R concludes that JPMorgan's association "with the underlying 'ISP' for the Emails does not compel the conclusion that JPMorgan USA exercises control over the servers that house the Emails or other responsive documents." (SPA17.) Without citation, the magistrate judge ruled that "[t]he issue here is whether Aguila has presented facts sufficient for the Court to draw the inference that JPMorgan USA possesses responsive discovery, not whether Aguila has demonstrated some ancillary connection between JPMorgan USA and the Emails." (*Id.*) The magistrate further ruled that it would not accept the report's conclusion that "[t]he geographic location of the IPs of the email origination servers" is in New York and that "the servers 'are owned by JPM Chase'" because that conclusion "is not supported by any facts or analysis." (*Id.*) The magistrate judge made no mention of the 275 pages of attachments to the report showing the tracing analysis. (A502-777.) Instead, the magistrate judge found that Aguila had failed to meet its burden of showing possession, custody, or control. (SPA18.)

Finally, the Second R&R stated that, if the court were to weigh the *Intel* factors, only two weighed in Aguila's favor. (SPA19.) The magistrate judge found that the first *Intel* factor weighed in favor of Aguila because JPMorgan would not be a participant in the contemplated proceedings. (SPA19-20.) The magistrate judge likewise found that the second *Intel* factor weighed in Aguila's

21

favor because there is no evidence that the Brazilian courts or authorities would not be receptive to the Section 1782 discovery. (SPA21-22.) However, the magistrate judge found that the third *Intel* factor weighed against Aguila because Aguila had not demonstrated that JPMorgan "has possession, custody, or control over documents responsive to the Subpoena," which suggests that "Aguila is on a fishing expedition and may be misusing the § 1782 device." (SPA23.) The magistrate judge similarly concluded that the fourth *Intel* factor weighed against Aguila because Aguila failed to show that JPMorgan had "possession, custody, or control of these documents." (SPA23-24.)

## K.   Aguila's Objections to the Second Report and Recommendation

On March 14, 2024, Aguila filed objections to the Second R&R, arguing that the magistrate judge erred in finding that Aguila failed to show that the documents were in JPMorgan's possession, custody, or control. (A822-835.) Aguila again pointed out the evidence it had submitted and noted that JPMorgan "has not provided any proof, affidavit, or evidence denying the documents existence, or that it could not determine who possessed them." (A828.)

Aguila also objected on the ground that the magistrate judge erred in concluding that the third and fourth *Intel* discretionary factors weigh against Aguila. (A830-836.)

**L.** **JPMorgan's Response to Aguila's Objections to the Second R&R (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the <u>Fourth</u> Time)**

On March 28, 2024, JPMorgan responded to Aguila's objections to the Second R&R, arguing that the magistrate judge correctly found that Aguila did not show "that [JPMorgan] has possession, custody, or control" of the documents. (A841.) JPMorgan then cited three decisions from district courts finding, in other instances, that documents in the possession of JPMorgan's subsidiaries are not in the possession, custody, or control of JPMorgan. (A841; A844-848.) JPMorgan did not, however, cite any opinions from the Second Circuit for this proposition. (*Id.*)

Most notably, and for fourth time, **<u>JPMorgan did not assert, let alone offer any evidence showing, that it did not have possession, custody, or control of the discovery sought.</u>** (A841-856.) Rather, JPMorgan simply stated that it "has no burden here." (A849.)

JPMorgan then went on to argue that the first, third, and fourth *Intel* factors also weigh against Aguila. (A849-856.)

**M.** **The Hearing on Aguila's Objections to the Second R&R (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the <u>Fifth</u> Time)**

On June 24, 2024, the district court held oral argument on Aguila's objections to the Second R&R. (A865-880.) In summarizing the case, the

23

district court described the procedural background and then concluded that it believed JPMorgan had said that it does "not have possession, custody, or control of any documents responsive to the subpoena." (A867.) Counsel for Aguila responded by disagreeing, noting—correctly—that JPMorgan had not made such an assertion. (A869-870.)

The Court then stated that it "share[s Aguila's] concern because [the district court] would have thought that a simple response from J.P. Morgan that says, 'Hey, we got this subpoena, we don't have any responsive documents,' that would have ended it." (A870.) The district court then put the question of possession to counsel for JPMorgan, who answered only that JPMorgan does not have *possession* of the documents: "JPMC does not possess relevant documents that the petitioner is seeking here, which makes sense because it is a holding company." (A871.)

The district court again noted that such a statement came quite late in the brief and asked again asked: "J.P. Morgan Chase says in response to this subpoena that was served on us we have no responsive documents?" (A872.) Counsel for JPMorgan then responded by contending that "it's the burden on the applicant to show possession, custody, and control, and they have not." (*Id.*)

The district court then noted that JPMorgan was "beginning to equivocate a bit," and asked: "Does J.P. Morgan Chase represent that it has no

24

documents?" (A872-873.) The district court correctly noted that the Federal Rules of Civil Procedure require that JPMorgan respond to a subpoena:

> [T]he way in which a subpoena would normally be responded to under the federal rule is not to say to the plaintiff you haven't shown that we have any documents. The person on whom the subpoena is served responds to the subpoena by either filing objections saying we don't have to respond to the subpoena in some way or there's a response that says we have no responsive documents. So that ends the subpoena, no responsive documents.

(A873.) The district court then asked counsel for JPMorgan whether it possesses any responsive documents: "So is it J.P. Morgan Chase's position that it 'has no documents'?" (*Id.*) Counsel for JPMorgan responded: "Yes." (*Id.*)

At no point did counsel for JPMorgan state that JPMorgan did not have control of the document sought. (A865-880.) In addition, there is no indication that counsel for JPMorgan had made any inquiry before declaring that JPMorgan did not possess any responsive documents. In any event, and for fifth time, **JPMorgan did not assert, let alone offer any evidence showing, that it does not have control of the discovery sought.**

For this reason, counsel for Aguila accepted the district court's offer to submit a letter after the hearing explaining Aguila's position with respect to the disposition of the Section 1782 Application. (A880.)

### N. Aguila's Letter Following the Hearing on Aguila's Objections to the Second R&R

On June 27, 2024, Aguila submitted a letter to the district court in which it stated that, before ruling on the Section 1782 Application, the district court should direct JPMorgan to clearly assert that JPMorgan does not have possession, custody, or control of the documents under penalty of perjury. (A861-864.) The letter noted that Federal Rule of Civil Procedure Rule 26(g)(1) requires all discovery responses be signed by a lawyer representing a party or by a party itself, and that the signature constitutes "a certification that the response is true to the best of the signor's knowledge after reasonable inquiry." (A861.) The letter correctly pointed out that JPMorgan has never been required to respond to the subpoena and "has submitted nothing more than carefully worded legal briefs arguing Aguila has failed to meet its supposed burden of establishing JPMorgan has 'possession, custody or control.'" (861.) Aguila's letter further stated, correctly, that JPMorgan has never actually denied, under oath, that JPMorgan has possession, custody, or control of the documents." (A862.)

The letter further argued that the district court should reject the Second R&R because the Second R&R misapplied the law. Specifically, the magistrate judge erred by reading into Section 1782 an additional (and nonexistent) requirement that an applicant must definitively prove that a respondent has

26

possession, custody, or control of responsive documents before the court will permit discovery. (*Id.*)

The letter concluded by requesting that the district court require JPMorgan to respond to Aguila's subpoena and afford Aguila the opportunity to test any assertions in that response regarding possession, custody, or control:

> If JPMC responds, in lieu of a document production, with a statement, under oath, that it lacks "possession, custody, and control" of the document sought, it should support that statement with sufficient evidence to satisfy its burden "to establish lack of access or undue burden." . . . . Then, if Aguila believes JPMC has failed to meet that burden, it can move this court of an order compelling JPMC's production.

(A873.)  Aguila's letter noted that JPMorgan "cannot be permitted to avoid production on mere innuendo in legal briefing." (*Id.*)  Such a failure to require JPMorgan to respond to the subpoena would deny Aguila the benefit of rights enshrined under Section 1782 and the Federal Rules of Civil Procedure. (*Id.*)

### O. JPMorgan's Response to Aguila's Letter Following the Hearing on Aguila's Objections to the Second R&R (JPMorgan Fails to Assert that it Does Not Have Possession, Custody, or Control of the Documents for the <u>Sixth</u> Time)

On July 9, 2024, JPMorgan responded to Aguila's letter, arguing again that it does not possess the documents sought because JPMorgan is a "bank holding company with no operations and no documents to produce." (A881.) Notably, JPMorgan did not include an affidavit or other evidence supporting

this statement, particularly the portion about having no operations. (*Id.*) In addition, JPMorgan said nothing about whether it has control over the documents. (A881-82.)

JPMorgan then cited the same decisions it cited before, which found, in other instances, that documents in the possession of JPMorgan's subsidiaries are not in the possession, custody, or control of JPMorgan. (A881.) JPMorgan went on to cite several more district court cases for the proposition that a party seeking discovery bears the burden of demonstrating possession, custody, or control. (*Id.*)

Incredibly, and after all the prodding from Aguila, **nowhere in the letter did JPMorgan assert, let alone offer any evidence showing, that it did not have control of the discovery sought**. (A881-82.)

To the contrary, Aguila tripled down on the argument that a Section 1782 Application must definitively prove that a respondent has possession, custody, or control of the requested documents before it can be granted. (A882.)

## P.    The District Court's Order Granting the Motion to Quash

The district court, having reviewed the Second R&R and the parties' letters, issued a Memorandum Opinion and Order on July 10, 2024, by which it adopted the Second R&R in its entirety, denied Aguila's Section 1782 Application, and granted JPMorgan's motion to quash. (SPA1.)

28

The order, like the two R&Rs, concluded that the Section 1782 Application should be denied because "Aguila has failed to meet its burden of establishing that JPMorgan Chase has possession, custody, or control of the documents." (SPA34.) The order, like the two R&Rs, considered the need to prove possession, custody, and control of the documents as a statutory requirement under 28 U.S.C. § 1782. In reaching this conclusion, the district court completely ignored applicable law and the evidence submitted by Aguila showing that JPMorgan does have possession, custody, or control of the documents; the district court instead focused on Aguila's alleged failure to show that JPMorgan controls its Brazilian subsidiary. (SPA33-34.) The district court supported its conclusion by citing the same set of district court decisions cited by JPMorgan and the R&Rs, which found, in other instances, that documents in the possession of JPMorgan's subsidiaries are not in the possession, custody, or control of JPMorgan. (SPA32-34.)

## SUMMARY OF THE ARGUMENT

The district court provided four reasons for granting JPMorgan's motion to quash and denying Aguila's Section 1782 Application, each of which was based on legal errors and/or clearly erroneous factual findings.

First, the district court erred as a matter of law in granting JPMorgan's motion to quash and denying Aguila's Section 1782 Application on the ground

29

that Aguila was required to prove that JPMorgan had possession, custody, or control of the documents before Aguila could be authorized to seek them. (SPA10; SPA35.) Section 1782 has only three statutory requirements, and proving possession, custody, or control is not among them. *See Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (listing statutory requirements). The district court's attempt to engraft the additional statutory requirement onto Section 1782 must be rejected.

Second, the district court made clearly erroneous findings of fact when it concluded that Aguila failed to carry its burden of demonstrating that JPMorgan had possession, custody, or control of the documents sought. (SPA10.) Aguila submitted evidence demonstrating that that JPMorgan did have possession, custody, or control, and JPMorgan submitted no evidence whatsoever to contradict that showing. (A466-777; A778.) Indeed, despite at least six opportunities to do so, JPMorgan did not even assert that it does not have possession, custody, or control over the documents sought. *See supra* at 15-16; 18-19; 22-25; 27-28. Under these circumstances, the district court's decision to brush aside Aguila's evidence and find for JPMorgan was clearly erroneous and must be reversed.

Third, the district court abused its discretion in finding that the third *Intel* factor weighed against Aguila on the ground that Aguila allegedly failed to prove

30

that JPMorgan had possession, custody, or control of the documents sought. (SPA33-34.) The proper inquiry under the third *Intel* factor examines "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Mees*, 793 F.3d at 298. Indeed, the district court recognized this legal standard, and applied it to reject JPMorgan's argument that the factor weighed against Aguila because Aguila had previously sought a portion of the discovery in Brazil and had been denied. (SPA33.) But then the district court inexplicably cast this legal standard aside and found that the factor weighed against Aguila because Aguila had failed to show possession, custody, or control. (SPA34.) This application of the incorrect legal standard constituted an abuse of discretion.

Fourth, the district court abused its discretion in finding that the fourth *Intel* factor weighed against Aguila on the ground that Aguila allegedly failed to prove that JPMorgan had possession, custody, or control of the documents sought. (SPA34-35.) The proper inquiry under the third *Intel* factor examines "whether the request is 'unduly intrusive or burdensome.'" *Mees*, 793 F.3d at 298 (quoting *Intel*, 542 U.S. at 264-65). Indeed, the district court recognized that this is the correct legal standard and applied it to reject JPMorgan's mistaken argument that the factor weighed against Aguila because the subpoena allegedly sought sweeping categories of documents (it did not). (SPA35.) But then the

31

district court inexplicably cast this legal standard aside and found that the factor weighed against Aguila because Aguila had failed to show possession, custody, or control. (SPA35.) This application of the incorrect legal standard also constituted an abuse of discretion.

In short, the district court held Aguila's Section 1782 Application to a far more restrictive standard than is permitted under controlling law. Accordingly, the district court's analysis was legally and factually erroneous, and its order denying Aguila's Section 1782 Application and quashing the subpoena must be reversed.

## ARGUMENT

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. Beginning with the adoption of a system of letters rogatory in 1855, and continuing with the enactment of the original Section 1782 in 1948, the revisions of the statute in 1948 and 1949, the "complete revision" of Section 1782 in 1964, and the most recent amendment in 1996, Congress has continually expanded the scope of federal courts' ability to provide assistance in gathering evidence for use in foreign tribunals. *Id.* at 247-49.

As explained by the Supreme Court of the United States, Section 1782 has two aims: (i) "providing efficient assistance to participants in international litigation"; and (ii) "encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252. Consequently, both the Supreme Court and this Court have acknowledged a Congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See, e.g., id.* at 247-48; *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("The goals of the statute are to provide 'equitable and efficacious' discovery procedures in United States courts 'for the benefit of tribunals and litigants involved in litigation with international aspects.'"); *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . . ."); *Accent Delight*, 869 F.3d at 134 ("The availability of Section 1782 discovery therefore is quite broad and only has broadened through successive amendments over the years.").

This liberal view of Section 1782 discovery is intended to solidify the United States as a helpful world citizen and encourage other countries to reciprocate when U.S. litigants seeks discovery abroad for use here:

> As a general matter, the Supreme Court and the Second Circuit have made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States for use in foreign litigation. That hospitality derives from Congress's desire to make the

33

> United States a helpful world citizen and, moreover, in the hope of obtaining similar receptivity abroad to efforts by litigants in American courts to obtain evidence located in other countries.

*In re Porsche Automobil Holding SE*, 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016).

In evaluating an application under Section 1782, courts typically begin by determining whether the application satisfies three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district [where] the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn*, 673 F.3d at 80.

After determining that the three statutory requirements are satisfied, courts must then consider four discretionary factors in deciding whether to grant a Section 1782 application: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent", (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign

34

country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65.

**A.** **The District Court Committed Reversible Error By Imposing An Additional and Unwarranted Statutory Requirement on Section 1782 – that an Applicant Prove that the Respondent Has Possession, Custody, or Control of the Documents Sought.**

The district court properly set forth the three statutory requirements of Section 1782 and properly found that Aguila satisfied them. (SPA19-26.) The district court erred, however, in imposing on Aguila a fourth statutory requirement—that Aguila must prove that JPMorgan has possession, custody, or control of the documents sought before Aguila could be entitled to seek discovery under Section 1782. (SPA26-30; SPA8-11.)

Courts in the Second Circuit have consistently and repeatedly held that Section 1782 has only three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district [where] the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn*, 673 F.3d at 80; *Mees*, 793 F.3d at 297; *Federal Republic of Nigeria v. VR Advisory Svc., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022).

Courts in the Second Circuit, and even the Supreme Court of the United States, have rejected any attempts to impose additional, threshold requirements

35

on Section 1782 applicants. *See, e.g.*, *Intel*, 542 U.S. at 260 ("If Congress had intended to impose such a sweeping restriction on the district court's discretion … it would have included statutory language to that effect."); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) ("Relying on the plain language of the statute, this Court has also refused to engraft a "quasi-exhaustion requirement" onto section 1782 . . . . By the same reasoning, we have also rejected any implicit requirement that any evidence sought in the United States be discoverable under the laws of the foreign country."); *In re Del Valle Ruiz*, 939 F.3d 520, 531-33 (2d Cir. 2019) (rejecting "a per se bar against discovery under § 1782 of evidence located abroad"); *In re Gianoli Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993) ("[W]e are not free to read extra-statutory barriers to discovery into section 1782.")

The district court's application of a fourth threshold requirement for Section 1782 applicants—that they must first prove the respondent has possession, custody, or control of the documents sought before their Section 1782 application may be granted—constitutes a clear error of law and must be reversed.

To be sure, a litigant cannot be required to produce documents that are not in its possession, custody, or control. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) (citing Fed. R. Civ. P. 34(a)). But the

36

determination of whether a party has possession, custody, or control over certain documents is made only after discovery requests are propounded, and a party from whom discovery is sought responds with objections under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 34(b)(2), 45(d)(2)(B). Such a response must be signed by the recipient of the discovery request or his lawyer, and only after the signer has made a reasonable inquiry and satisfied himself that, to the best of the signer's knowledge, the response "is complete and correct" and is "warranted by existing law." Fed. R. Civ. P. 26(g)(1). Indeed, by signing the discovery response, the signer has certified that he has done so. *See id.*

If the party seeking the discovery is unsatisfied with a response, then that party may then test the response, typically through a motion to compel, where the parties submit argument and evidence. *See* Fed. R. Civ. P. 37(a)(3)(B) (allowing a party seeking discovery to move for an order compelling production); S.D.N.Y. L.R. 7.1(a) (requiring motions to include a memorandum of law setting forth authorities in support of the motion, as well as supporting affidavits and exhibits thereto containing any factual information and parts of the record necessary for the decision on the motion).

This sequence of events makes sense, and even the district court recognized that the law requires it: "When a discovery application is granted pursuant to 28 U.S.C. § 1782(a), the requested documents must be produced 'in

37

accordance with the Federal Rules of Civil Procedure.'" (SPA8.) (quoting 28 U.S.C. § 1782(a)). Indeed, by forcing discovery recipients to determine—after a reasonable inquiry—whether documents are in their possession, custody, or control, the Federal Rules of Civil Procedure give teeth to the liberal discovery rules in the United States, which allow litigants to request documents from their adversaries that are in their adversaries' possession, custody, or control. *See* Fed. R. Civ. P. 34(a)(1).

The district court's opposite rule—that a Section 1782 applicant must prove that his adversary has possession, custody, or control before even being able to propound discovery—would turn American-style, liberal discovery on its head. But that is exactly what Section 1782 was meant to avoid. *See Accent Delight*, 869 F.3d at 134 ("The availability of Section 1782 discovery therefore is quite broad and only has broadened through successive amendments over the years."); *In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, 2024 WL 555780, at *14 (S.D.N.Y. Jan. 18, 2024) (noting that Section 1782 discovery was appropriate despite more restrictive discovery rules in Switzerland and the UK). The district court's imposition of an additional requirement on Section 1782 applicants that conflicts with the Federal Rules of Civil Procedure and U.S. discovery law must be rejected.

The cases cited by the district court for the proposition that a Section 1782 applicant must prove that its adversary has possession, custody, or control of the discovery sought before discovery may be granted under the statute either (a) are distinguishable because the parties resisting discovery asserted and provided proof that the documents are not in their possession, custody, or control, or (b) are wrongly decided because they impose an extra-statutory barrier to discovery under Section 1782. (SPA10-11.) (citing *In re Boustany*, 2024 WL 473569 (S.D.N.Y. Feb. 7, 2024); *In re FourWorld Event Opportunities Fund, L.P.*, No. 2023 WL 3375140 (S.D.N.Y. May 11, 2023); *In re Mun*, 2022 WL 17718815, (S.D.N.Y. Dec. 15, 2022); and *In re Liverpool Ltd. P'ship*, 2021 WL 5605044 (S.D.N.Y. Nov. 24, 2021)).)

The Court should accordingly reverse the district court and direct it to enter an order allowing Aguila to serve the subpoena on JPMorgan, and commanding JPMorgan to respond to the subpoena in accordance with the Federal Rules of Civil Procedure.

**B.** **The District Court Made Clearly Erroneous Findings of Fact When it Concluded that Aguila Failed to Carry its Burden of Demonstrating that JPMorgan Has Possession, Custody, or Control of the Documents Sought.**

To the extent Aguila was required to demonstrate possession, custody, or control to show its entitlement to discovery under Section 1782—which it was

not—Aguila met this burden. The district court's finding otherwise relied on clearly erroneous findings of fact.

In response to JPMorgan's motion to quash, Aguila submitted evidence showing that the documents sought are, in fact, in the possession, custody, or control of JPMorgan. (A503-777.) That evidence included, among other things, that (i) all communications with Aguila (including those copying Petrobras) were in English, and (ii) all communications with Aguila were handled through @jpmorgan.com and @jpmchase.com email domains with signature disclaimers that link to the jpmorgan.com website (i.e., JPMorgan's website). (A298-299.)

In addition, Aguila submitted a declaration and report from a forensic expert who analyzed the emails sent from the "@jpmorgan.com" and "@jpmchase.com" domains to Aguila regarding the Bahia Terra Cluster auction. (A503-777.) The report concluded that the ISP for the emails was JPMorgan. (A510-520.) The report further concluded that the "Source Server" for the domain "jpmchase.net," from which the emails originated, belonged to JPMorgan Chase, NA, JPMorgan's wholly owned, national bank subsidiary. (A509.) Finally, the report concluded that the servers were located in New York, NY, not Brazil, and the IP addresses of the originating servers for the emails were located in New York, NY. (A787-788.)

40

The district court merely brushed all this evidence aside and concluded that Aguila had not met its burden of demonstrating possession, custody, or control—despite the fact that JPMorgan failed to submit any evidence to the contrary or even assert that it lacked possession, custody, or control. (SPA26-30.) In doing so, the district court made clearly erroneous findings of fact.

First, the district erred in asserting that it is irrelevant that the forensic report concluded that the emails sought by Aguila traveled through servers owned by JPMorgan Chase, NA, in New York. (SPA27.) According to the district court, it means nothing because JPMorgan Chase, NA, is not JPMorgan. (*Id.*) Such an assertion blinks reality. JPMorgan Chase, NA, is JPMorgan's wholly owned, national bank subsidiary. (A366-367.) The notion JPMorgan, which is publicly traded, does not control and could not access the servers of its wholly owned national bank subsidiary is unrealistic. Jamie Dimon is the Chairman of the Board of Directors and Chief Executive Officer of JPMorgan.[1] It is inconceivable that he could not control and would be denied access to the email servers of JPMorgan's national bank subsidiary.

Second, the district court erred in asserting that it is irrelevant that the forensic report concluded that the ISP for the emails about the Bahia Terra

---

[1] Available at: https://www.jpmorganchase.com/about/leadership/jamie-dimon.

Cluster was JPMorgan. (SPA28.) The district court blithely stated that, "simply because JPMorgan USA is associated with the underlying 'ISP' for the Emails does not compel the conclusion that JPMorgan USA exercises control over the servers that house the Emails or other responsive documents" and therefore the district court could not "draw the inference that JPMorgan USA possesses responsive discovery." (*Id.*) Again, this conclusion ignores the facts. Aguila submitted uncontroverted evidence that JPMorgan is the ISP for the emails sent to Aguila about the Bahia Terra Cluster, and the district court simply ignores that fact. This finding is clearly erroneous.

Third, and finally, the district court erred in finding that it is irrelevant that the emails about the Bahia Terra Cluster were traced to New York. (SPA28-29.) Again, this conclusion ignores reality. The emails were sent from JPMorgan email accounts, and the IP addresses trace back to originating servers in New York, NY. (A787-788.) Certainly, this evidence is highly persuasive that JPMorgan, whose principal place of business is in New York (A365), has possession, custody, or control of the emails on its servers there.

The district court's clearly erroneous findings of fact with regard to whether Aguila demonstrated that the documents are in the possession, custody, or control of JPMorgan further warrant reversal.

42

## C. The District Court Committed Reversible Error with Regard to the Third *Intel* Factor.

In adopting the Second R&R in its entirety, the district court adopted the Second R&R's erroneous conclusion that the third *Intel* factor weighs against Aguila because Aguila "failed to meet its burden of establishing that JP Morgan Chase has possession, custody, or control of the documents." (SPA6.) This conclusion constitutes an abuse of discretion because it disregards the proper legal standard applicable to the third *Intel* factor.

In weighing the third *Intel* factor, the district court announced the correct legal standard:

> The third *Intel* factor asks "whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Mangouras [v. Squire Patton Boggs]*, 980 F.3d [88,] 98 [(2d Cir. 2020)]. Circumvention exists if the application is an attempt to evade discovery procedures in the foreign jurisdiction or where the record indicates that the application is otherwise a "bad faith endeavor to misuse Section 1782." *[In re Zouzar] Bouka*, 637 F. Supp. 3d [74,] 90 [(S.D.N.Y. 2022)]; *see In re Hansainvestment Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018) (holding that the third *Intel* factor weighed in the applicant's favor absent showing of "any improper or bad faith evasion of German procedures").

(SPA33.) The district court even applied this legal standard correctly in rejecting JPMorgan's argument that the factor weighs against Aguila because Aguila had requested certain of the discovery from Petrobras in Brazil and was denied:

43

"Aguila's unsuccessful attempt to obtain one piece of discovery from a different entity in Brazil does not establish that this § 1782 application seeking different discovery is an attempt to circumvent Brazilian proof-gathering restrictions." (SPA33-34.)

The district court then inexplicably set the proper legal standard aside and concluded that Aguila's failure to demonstrate that JPMorgan "has possession, custody, or control over documents responsive to the Subpoena suggests that Aguila is on a fishing expedition and may be misusing the § 1782 device." (SPA33-34.) This conclusion has no basis in the proper legal standard applicable to the third *Intel* factor, and it consequently constitutes an abuse of discretion.

Application of the correct legal standard set forth above shows that the factor weights in favor of Aguila, not against it. Aguila's Section 1782 application in no way constituted an "attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *See Mangouras*, 980 F.3d at 98. The district court's finding otherwise constituted an abuse of discretion.

### D. The District Court Committed Reversible Error with Regard to the Fourth *Intel* Factor.

In adopting the Second R&R in its entirety, the district court adopted the Second R&R's erroneous conclusion that the fourth *Intel* factor weighs against Aguila because Aguila "has not shown that JPMorgan USA has possession,

44

custody, or control of these documents." (SPA35.). This conclusion constitutes an abuse of discretion because it disregards the proper legal standard applicable to the third *Intel* factor.

In weighing the fourth *Intel* factor, the district court announced the correct legal standard:

> [T]he fourth *Intel* factor considers "whether the request is unduly intrusive or burdensome." *Mangouras*, 980 F.3d at 98. This factor is measured by the standards of Federal Rule of Civil Procedure 26. *See In re XPO Logistics, Inc.*, 2017 WL 6343689, at *4 (S.D.N.Y. Dec. 11, 2017) (citing *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015)). As applied to § 1782 applications, Rule 26 "contemplates that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Associacão [dos Profissionais dos Correios v. Bank of N.Y. Melon Corp.]*, 2022 WL 4955312, at *8 [(S.D.N.Y. Oct. 4, 2022)]. The "proportionality analysis depends on the relevance of the information sought—and, in the case of a § 1782 petition, relevance is assessed with regard to the foreign proceeding." *Catalyst Managerial Servs., DMCC v. Libya Africa Inv. Portfolio*, 680 F. App'x 37, 39 (2d Cir. 2017) (summary order).

(SPA34.) The district court even applied this legal standard correctly in rejecting JPMorgan's argument that the factor weighs against Aguila because the subpoena sought sweeping categories of documents: "the Court agrees with Aguila (and disagrees with JPMorgan USA's arguments to the contrary. . .) that the Subpoena seeks discrete categories of documents narrowly tailored to the

relevant timeframe—February 2021 to the present—that are relevant to its allegations against JPMorgan Brazil and Petrobras." (SPA35.)

The district court then inexplicably set the proper legal standard aside and concluded that the factor weighs against Aguila because Aguila "has not shown that JPMorgan USA has possession, custody, or control of these documents." (*Id.*) This conclusion has no basis in the proper legal standard applicable to the fourth *Intel* factor, and it consequently constitutes and abuse of discretion.

Application of the correct legal standard set forth above shows that the factor weight in favor of Aguila, not against it. Aguila's Section 1782 application included discovery requests that were narrowly tailored and were in no way "unduly intrusive or burdensome." *Mangouras*, 980 F.3d at 98. The district court's finding otherwise constituted an abuse of discretion.

### E. The District Court Correctly Concluded that First and Second *Intel* Factors Weigh in Favor of Aguila.

The district court correctly concluded that the first *Intel* factor weighs in favor of Aguila because JPMorgan would not be a "participant" in the Contemplated Proceedings. (SPA32.)

The district court likewise correctly concluded that the second *Intel* factor weighs in favor of Aguila because "'[t]here is no evidence before this Court suggesting that Brazil or Brazilian Courts are unreceptive to requests by U.S. persons for judicial assistance [and] Courts in this district recently have granted

46

requests for section 1782 discovery for use in Brazilian proceedings.'" (SPA32) (quoting *Ex Parte Abdalla*, 2021 WL 168469, at *5 (S.D.N.Y. Jan. 19, 2021).)

### F. The District Court Correctly Concluded that Aguila's Application Satisfied the Statutory Requirements of Section 1782.

The district court correctly concluded that Aguila's Section 1782 Application satisfied the statutory requirements of Section 1782. (SPA21-26.)

In addition to the discretionary factors discussed above, a Section 1782 applicant must satisfy three statutory requirements: (i) the person from whom discovery is sought must reside or be found within the district; (ii) the discovery must be for use in a proceeding before a foreign or international tribunal; and (iii) the application must be made by an interested person. 28 U.S.C. § 1782(a). Aguila's Application meets each of these three requirements.

*First*, as found by the district court, JPMorgan is found in the Southern District of New York. (SPA21-22.)

*Second*, the discovery sought in the Section 1782 Application is "for use" in the three contemplated proceedings in Brazil. (A28-30; SPA 22-25.) A Section 1782 applicant need only show that the materials sought will be employed with some advantage or serve some use in the proceeding; the ""for use" requirement does not mean that the evidence must be admissible in foreign tribunal." *In re Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011) ("as the Court

47

made clear in Intel, there is no requirement that the material be discoverable in the foreign country for it to be discoverable pursuant to section 1782 in the United States."). Here, Aguila has demonstrated that the discovery sought in its Section 1782 Application is critical to Aguila's ability to show that JPMorgan Brazil and Petrobras acted in concert to unlawfully disqualify Aguila from the Bahia Terra Cluster auction process. (A34.)

*Third*, Aguila is an "interested party" in the contemplated proceedings because it will be the plaintiff in the contemplated judicial proceeding, and because it was damaged by the conduct adopted by JPMorgan Brazil and Petrobras, which will be investigated by the TCU and MPF. (A36; SPA25-26.) *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the interested persons who may invoke [Section] 1782." (internal quotations omitted). Thus, the third statutory requirement is plainly satisfied.

## CONCLUSION

For the foregoing reasons, Aguila respectfully requests that the Court vacate the district court's order of July 10, 2024, and remand the case to the district court with directions to allow Aguila to serve its subpoena on JPMorgan and command JPMorgan to respond to it.

Respectfully submitted,

GABRIELA M.B. SCANLON
MB Scanlon PLLC
4301 50th Street NW
Washington, DC 20016
Tel. (215) 459-1171

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 10.570 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Calisto 14-point font.

**Dated: November 22, 2024**

    s/Gabriela MB Scanlon

    _____

    GABRIELA M.B. SCANLON
    MB Scanlon PLLC
    4301 50th Street NW
    Washington, DC 20016
    Tel. (215) 459-1171

**Special Appendix**

i

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

**Page**

Memorandum Opinion and Order, dated July 10, 2024............... SPA1

Report and Recommendation, dated February 29, 2024 ............ SPA11

# SPA1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AGUILA ENERGIA E PARTICIPÇÕES LTDA.

                          Petitioner,        22-mc-00228(JGK)

    – v –                                    MEMORANDUM OPINION AND
                                             ORDER
JPMORGAN CHASE & CO.,

                          Respondent.

---

JOHN G. KOELTL, District Judge:

The Court has received the Report and Recommendation by
Magistrate Judge Sarah L. Cave, dated February 29, 2024, which
recommends that this Court grant the motion of the respondent,
JPMorgan Chase & Co ("JPMorgan Chase"), to quash a subpoena
served by the petitioner, Aguila Energia e Participações Ltda.
("Aguila"), pursuant to 28 U.S.C. § 1782. See ECF No. 32. Aguila
has timely filed objections to the Report and Recommendation,
see ECF No. 33, and JPMorgan Chase has filed a response, see ECF
No. 34.

Reviewing the Report and Recommendation de novo, the
objections are **overruled,** and the Report and Recommendation is
**adopted** substantially for the reasons stated therein.

## I.

This case arises out of efforts to auction off oil and gas
assets owned by Petrobras, a Brazilian company that produces and
refines oil and natural gas. See ECF No. 1 at 11; ECF No. 32 at

1

2. The auction was administered by JPMorgan Brazil, acting as Petrobras's financial advisor. See ECF No. 1 at 15-16. Aguila alleges that it made the highest bid on two different occasions, but that JPMorgan Brazil disrupted the transaction by requesting that Aguila provide an unreasonable number of financial documents and information on an unreasonably accelerated timeline. Id. at 16-17. After the second auction fell through, Aguila commenced three suits against JPMorgan Brazil: a civil suit in Brazilian court, an administrative complaint filed with the Brazilian General Accounting Office, and a criminal complaint filed with the Brazilian Federal Prosecutor's Office (the "Brazilian proceedings"). See ECF No. 1 at 3, 9.

To supplement its Brazilian proceedings against JPMorgan Brazil, Aguila filed an ex parte application pursuant to 28 U.S.C. § 1782 for an order to serve a subpoena on JPMorgan Chase, the holding company for Chase subsidiaries, to obtain documents relating to its claims against Petrobras and JPMorgan Brazil. See ECF No. 1; ECF No. 4. Aguila alleged that, as the parent company of JPMorgan Brazil, JPMorgan Chase had possession of all the electronic materials and communications produced during the auction process. See ECF No. 1 at 11-13; ECF No. 33 at 6.

On August 22, 2023, in a thorough Report and Recommendation, the Magistrate Judge denied Aguila's Section

2

# SPA3

1782 application, determining that Aguila had failed to demonstrate that JPMorgan Chase possessed relevant evidence. See ECF No. 9.[1] On September 28, 2024, this Court held a telephone conference with the parties and issued an Order permitting Aguila to serve the subpoena on JPMorgan Chase, and set a briefing schedule for JPMorgan Chase to file a motion to quash that subpoena. See ECF No. 15. On October 20, 2023, JPMorgan Chase filed a timely motion to quash, and this Court referred that motion to the Magistrate Judge. ECF No. 28.

On February 29, 2024, the Magistrate Judge issued a second Report & Recommendation, finding that the statutory requirements of Section 1782 were not satisfied and, in any event, that Aguila failed to demonstrate that the third and fourth Intel factors weighed in Aguila's favor. See ECF No. 32 at 18-24 (citing Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) ("Intel")). The Magistrate Judge therefore recommended that this Court grant JPMorgan Chase's motion to

---

[1] Courts in this District previously treated applications made pursuant to 28 U.S.C. § 1782 as non-dispositive motions that Magistrate Judges had the authority to hear and determine by order. However, a recent unreported decision by the Court of Appeals for the Second Circuit called into question the propriety of this view. See Associaocao dos Profissionais dos Correios v. Bank of New York Mellon, No. 22-2865, 2023 WL 3166357 (2d Cir. Mar. 29, 2023). In this case, the Magistrate Judge addressed this uncertainty in the initial Report and Recommendation, by issuing the Report and Recommendation as a dispositive ruling. See ECF No. 9 at 1, n.1.

quash and deny Aguila's Section 1782 application. See ECF No. 32.

Aguila objected to the second Report and Recommendation, contending, among other things, that the documents they seek are in JPMorgan Chase's possession and that third and fourth Intel factors weigh in Aguila's favor. See ECF No. 33. JPMorgan Chase filed a timely response to Aguila's objections, arguing that Aguila failed to demonstrate that JPMorgan Chase had possession, custody, or control of the documents, and that the first, third, and fourth Intel factors weighed strongly against Aguila. See ECF No. 34. JPMorgan Chase does not argue that the second Intel factor weighs against Aguila's application. Id. at 11 n.3.

On June 24, 2024, this Court heard oral argument on Aguila's objections to the Magistrate Judge's Report and Recommendation. At that hearing, JPMorgan Chase again represented that it did not possess the relevant documents. See Hearing Tr. at 9. At the conclusion of the hearing, this Court invited Aguila to inform the Court by letter whether Aguila considered the petition resolved, id. at 15-16, and Aguila submitted a letter on June 27, 2024, see ECF No. 40. Among other issues, Aguila alleged in that letter that JPMorgan Chase had never responded to Aguila's subpoena requesting that JPMorgan Chase produce the relevant documents. See id. at 1-2. On July 9, 2024, JPMorgan Chase responded that it had informed Aguila on

"numerous occasions" that JPMorgan Chase is "a bank holding company with no operations and no documents to produce." See ECF No. 45 at 1 (citing ECF No. 27 at 7; ECF No. 34 at 16).

Because Aguila has failed to meet its burden of establishing that JP Morgan Chase has possession, custody, or control of the documents it seeks, Aguila's Section 1782 motion is **denied**, the motion to quash the subpoena is **granted**, and the Report and Recommendation is adopted in full.

## II.

We review de novo a Magistrate Judge's Report and Recommendation, reviewing all elements as to which an objection has been filed. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).[2] Where an objection has been made, the Court must "arrive at its own, independent conclusion about those portions of the magistrate's report to which objection is made." Nelson v. Smith, 618 F. Supp 1186, 1189-90 (S.D.N.Y. 1985). The Court may adopt those portions of the Report and Recommendation "to which no specific written objection is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous." United States Sec. & Exch. Comm'n v. Collector's Coffee Inc., 603 F.

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

Supp. 3d 77, 83 (S.D.N.Y. 2022) (citing Fed. R. Civ. P. 72(b);

Thomas v. Arn, 474 U.S. 140, 149 (1985)); Rule 72(b)(3).

Regarding the application for discovery in this case,

Section 1782 "authorizes, but does not require," district courts

to assist applicants to obtain discovery for use in foreign

proceedings. Intel, 542 U.S. at 255. Under Section 1782, courts

have wide discretion to determine whether to grant discovery and

can tailor any requested discovery "to avoid attendant

problems." Application of Esses, 101 F.3d 873, 876 (2d Cir.

1996). In considering discovery applications under Section 1782,

courts should consider the twin aims of the statute: "providing

efficient means of assistance to participants in international

litigation in our federal courts and encouraging foreign

countries by example to provide similar means of assistance to

our courts." Id. (quoting In re Application of Malev Hungarian

Airlines, 964 F.2d 97, 100 (2d Cir. 1992)).

In order to obtain discovery under Section 1782, the

applicant must show the following requirements:

> (1) that the person from whom discovery is sought reside
> (or be found) in the district of the district court to
> which the application is made, (2) that the discovery be
> for use in a proceeding before a foreign tribunal, and (3)
> that the application be made by a foreign or international
> tribunal or "any interested person."

Id. at 875 (quoting In re Application of Gianoli Aldunate, 3

F.3d 54, 58 (2d Cir. 1993)).

When these three requirements are satisfied, district courts consider the following factors – the Intel factors - in deciding whether to exercise their broad discretion: (1) whether the discovery target is a party to the foreign proceeding, (2) whether the foreign tribunal will be receptive to assistance from a United States federal court, (3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the discovery request is unduly intrusive or burdensome. Intel, 542 U.S. at 264-65; In re del Valle Ruiz, 939 F.3d 520, 533-34 (2d Cir. 2019).

**A.**

When a discovery application is granted pursuant to 28 U.S.C. § 1782(a), the requested documents must be produced "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). Thus, the discovery requested must be in the responding party's "possession, custody, or control." Fed. R. Civ. P. 34. For the purposes of Section 1782(a), a party "need not actually possess material to be a properly subpoenaed party—rather, the party has control over material that it has the practical ability to obtain or that it has the legal right to obtain." See In re Liverpool Limited Partnership, 2021 WL 5605044 (S.D.N.Y. Nov. 24, 2021). In this case, therefore, the issue of whether JPMorgan Chase possesses or has control over

the documents that Aguila seeks is the controlling question.
Accordingly, if Aguila fails to meet its burden of establishing
JPMorgan Chase's possession, custody, and control of the
relevant documents, then Aguila's Section 1782 application
fails. See In re Mun, No. 22-MC-163, 2022 WL 17718815, at *2
(S.D.N.Y. Dec. 15, 2022).

### B.

Aguila contends that JPMorgan Chase was the entity with
control of all communications in Brazil, and therefore that it
possessed "all electronic materials that [were] produced during
these specific communications regarding the auction process."
ECF No. 33 at 6. Moreover, because JPMorgan Chase is the
"largest American financial institution," Aguila alleges "it is
unlikely that it has no access to simple electronic files
regarding mails and video calls recordings transmitted through
its domains, something that is has not denied." Id. at 7.

Nevertheless, a parent company does not automatically
possess documents that belong to its subsidiaries. See Mun, 2022
WL 17718815, at *2. Rather, the party seeking discovery must
establish that the parent company has a certain amount of
control over the subsidiary, for example when there is
"substantial overlap between the management executives of the
parent and the subsidiary" and the parent company is
"responsible for [the subsidiary's] compliance, risk management,

governance, and financial reporting operations[.]" Liverpool,
2021 WL 5605044, at *3 (citing Motorola Credit Corp. v. Uzan,
No. 2-CV-666, 2013 WL 6098388, at *3 (S.D.N.Y. Nov. 20, 2013)).

Aguila objects to the Magistrate Judge's finding that
Aguila did not meet its burden of showing that JPMorgan Chase
possesses, controls, or has custody over the requested documents
and communications. See ECF No. 33 at 5-6. But, in response to
Aguila's objections, JPMorgan Chase insists that JPMorgan Chase
possesses none of the documents that Aguila seeks, see ECF No.
34 at 16, and that Aguila's request is properly directed at
JPMorgan Brazil, id.

This argument is consistent with the Magistrate Judge's
conclusion that Aguila failed to show that JPMorgan Chase
participated in the auction or the decisions to deny Aguila's
bids for assets; instead, Aguila seeks documents from JPMorgan
Chase "solely relating the alleged activities and communications
of individuals operating on behalf of its subsidiary, JPMorgan
Brazil, and Petrobras." See ECF No. 32 (citing ECF No. 4-1 at
13-14; ECF No. 1). Accordingly, because Aguila has failed to
meet its burden of establishing that JPMorgan Chase has
possession, custody, or control of the documents, Aguila's 28
U.S.C. § 1782 petition is properly denied. See In re Boustany,
2024 WL 473569 (S.D.N.Y. Feb. 7, 2024); In re FourWorld Event
Opportunities Fund, L.P., 2023 WL 3375140 (S.D.N.Y. May 11,

2023); <u>Mun</u>, 2022 WL 17718815, at *2; <u>Liverpool</u>, 2021 WL 5605044, at *2-3.

## CONCLUSION

The Court has considered all the arguments by the parties. To the extent not specifically discussed, the remaining arguments are either moot or without merit. The Court adopts the Magistrate Judge's Report & Recommendation in its entirety. Accordingly, the objections to the Report and Recommendation of the Magistrate Judge dated February 29, 2024 are **overruled.** The Clerk is directed to close all open motions and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           July 10, 2024

_____
          John G. Koeltl
    **United States District Judge**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AGUILA ENERGIA E PARTICIPAÇÕES LTDA.,

                                    Petitioner,

          -v-

JPMORGAN CHASE & CO.,

                                    Respondent.

CIVIL ACTION NO. 22 Misc. 228 (JGK) (SLC)

**REPORT & RECOMMENDATION**

**SARAH L. CAVE,** United States Magistrate Judge.

**TO THE HONORABLE JOHN G. KOELTL**, United States District Judge:

## I.     INTRODUCTION

On August 22, 2022, Aguila Energia e Participações Ltda. ("Aguila"), a Brazilian company,

filed an ex parte application for an order pursuant to 28 U.S.C. § 1782 to serve a subpoena on

JPMorgan Chase & Co. ("JPMorgan USA"), an American company, to obtain discovery for use in

three contemplated legal proceedings in Brazil:  (i) a civil lawsuit brought by Aguila against Banco

J.P. Morgan S.A. ("JPMorgan Brazil"), a Brazilian subsidiary of JPMorgan USA; (ii) an administrative

complaint filed by Aguila with the Brazilian General Accounting Office (also known as the Tribunal

de Contas da União ("TCU")) seeking an investigation of JPMorgan Brazil and Petroleo Brasileiro

S.A. ("Petrobras"); and (iii) a criminal complaint filed by Aguila with the Brazilian Federal

Prosecutor's Office (also known as the Ministério Público Federal ("MPF")) seeking an

investigation of JPMorgan Brazil and Petrobras (together, the "Contemplated Proceedings").

(ECF No. 1 (the "Application"); see ECF No. 4-1 (the "Subpoena")).  The Subpoena seeks

documents relating to Aguila's claim that JPMorgan Brazil engaged in fraud in failing to complete

sales of assets (the "Assets") to Aguila in connection with an auction of oil and gas concessions

(i.e., land from which oil and natural gas can be obtained) and facilities in the Brazilian state of Bahia (the "Auction").  (See ECF No. 1 at 4–9.  On September 25, 2023, JPMorgan USA appeared in the case (ECF No. 12), and after a conference held on September 28, 2023 (ECF No. 14), the Honorable John G. Koeltl issued an Order permitting Aguila to serve the Subpoena on JPMorgan USA without prejudice to JPMorgan USA's ability to move to quash the Subpoena.  (ECF No. 15).

Now before the Court is JPMorgan USA's motion to quash the Subpoena (ECF No. 19 (the "Motion")), which Aguila opposes (ECF Nos. 24–26 (the "Opposition")) and which Judge Koeltl has referred for a report and recommendation.  (ECF No. 28).  For the reasons set forth below, the Court respectfully recommends that the Motion be GRANTED, the Subpoena be QUASHED, and the Application be DENIED.

## II.    BACKGROUND

### A.  Factual Background

Aguila is a Brazilian company that provides services and develops projects related to oil and natural gas.  (ECF No. 1 at 11; ECF No. 5).  Petrobras is a Brazilian company that, inter alia, produces and refines oil and natural gas.  (ECF No. 1 at 10).  Aguila alleges that, in November 2020, Petrobras publicly announced that it would auction certain of its assets in Bahia to a private company, with JPMorgan Brazil acting as its financial advisor.  (Id. at 15–16).  Aguila claims that, in August 2021, it made the highest bid at the Auction and JPMorgan Brazil selected Aguila as the winner.  (Id. at 5).  Aguila alleges that in the months that followed during negotiations, however, JPMorgan Brazil issued a series of requests for financial documents and information from Aguila designed to disrupt the transaction.  (Id. at 6).  According to Aguila, JPMorgan Brazil's requests became more and more unreasonable, culminating in JPMorgan

Brazil's request for an "irrevocable debt and equity commitment letter," which Aguila claims Petrobras has never required of a bidder "so early in the process." (Id.) In February 2022, when Aguila failed to comply with that request, JPMorgan Brazil and Petrobras disqualified Aguila's bid. (Id.)

After disqualifying Aguila's bid, Petrobras reopened the Auction. (ECF No. 1 at 6). Aguila bid on the Assets a second time, and again made the highest bid. (Id. at 16). Aguila alleges that, during a videoconference in March 2022 (the "Videoconference"), "Petrobras and JPMorgan Brazil agreed that Aguila offered the best price" for the Assets. (Id.) At the same meeting, Aguila agreed to produce within five business days additional financial documents to JPMorgan Brazil in connection with the transaction. (Id. at 17).

Aguila claims that, following the Videoconference, Petrobras and JPMorgan Brazil again acted in concert to disrupt the transaction so that they could sell the Assets to another party. (ECF No. 1 at 17–20). Specifically, Aguila claims that JPMorgan Brazil, acting on behalf of Petrobras, unilaterally imposed a stricter deadline of one business day for production of the requested financial documents, and then did not respond to Aguila's multiple attempts to contact them. (Id. at 17). In April 2022, Aguila commenced a proceeding (the "Brazil Proceeding") in Rio de Janeiro State Court (the "Brazilian Court") to compel Petrobras to produce a copy of its recording of the Videoconference and to refrain from continuing negotiations with other bidders for the Assets. (Id. at 18). Although the Brazilian Court issued orders partially in Aguila's favor in April 2022 and June 2022 (id. at 18–20; ECF Nos. 1-12; 1-14), Aguila alleges that, in the Brazilian Proceeding, Petrobras informed Aguila that it had again been disqualified as a bidder for the

Assets.  (ECF No. 1 at 18).[1]  Overall, Aguila claims that it was "twice used as bait" by Petrobras and JPMorgan Brazil, and that its two winning bids were unlawfully disqualified.  (Id. at 20).

For its part, JPMorgan USA contends that Aguila "submitted offers but was ultimately not selected" as the winning bidder of the Assets.  (ECF No. 20 at 8).  JPMorgan USA notes that, in September 2023, Petrobras terminated its plan to sell the Assets.  (Id.; see ECF Nos. 20 ¶ 9; 22-3).

### B.  Procedural History

#### 1.  The Application

On August 22, 2022, Aguila filed the ex parte Application seeking an order permitting it to serve the Subpoena on JPMorgan USA for documents relating to its claims against Petrobras and JPMorgan Brazil.  (ECF No. 1; see ECF Nos. 4; 4-1).  Aguila argued that JPMorgan USA—although not an anticipated party to the Contemplated Proceedings—possesses discovery that would "provide key elements" to the anticipated TCU and MPF investigations and that would be "essential" to Aguila's civil claims against Petrobras and JPMorgan Brazil, its subsidiary. (ECF No. 1 at 13).   Aguila sought documents and communications between individuals from Aguila, Petrobras, and JPMorgan Brazil involving the Auction and subsequent negotiations, for the period February 25, 2021 to the present.  (ECF No. 4-1 at 13–14).  To support its claim that JPMorgan USA had "possession, custody, or control" over relevant documents, Aguila cited emails from JPMorgan Brazil with the domains "@jpmorgan.com" and "@j[pm]chase.com," asserting that disclaimers in those emails "link to the jpmorgan.com website" and "official letters and

---

[1] JPMorgan USA notes that, on November 8, 2022 the "Twentieth Civil Chamber of the Judiciary Branch of the State of Rio de Janeiro (the 'Brazilian Appellate Court') reversed both the April 2022 [] and June 2022" orders, finding that the dispute between Aguila and Petrobras was subject to a binding arbitration agreement.  (ECF No. 22 ¶ 6).

emails were signed as 'J.P. Morgan' or 'J.P. Morgan Team.'" (ECF No. 1 at 8–9, 12). Therefore, Aguila argued, "it is reasonable to assume JPMorgan USA has custody in or control from this District over the requested communications, documents and a recording of the March 30, 2022 [Videoconference]," and "Aguila has strong indications that JPMorgan USA is in possession of the evidence it seeks." (Id. at 9–10, 12-13).

On August 22, 2023, the Court issued a Report & Recommendation recommending that the Application be denied because, in substance, Aguila had failed to establish that JPMorgan USA had possession, custody, or control over the requested documents. (ECF No. 9 at 8–9 and passim (the "R&R")). In re Aguila Energia e Participações Ltda., No. 22 Misc. 228 (RA) (SLC), 2023 WL 7001445 (S.D.N.Y. Aug. 22, 2023). The Court concluded that, even without the benefit of JPMorgan USA appearing in the case to brief this issue, the Application failed to establish Aguila's entitlement to discovery under § 1782 and the Federal Rules of Civil Procedure. (Id.) On September 5, 2023, Aguila filed objections to the R&R. (ECF No. 10). On September 21, 2023, the Honorable Ronnie Abrams—then assigned to the case—issued an Order permitting that, "[i]f JPMorgan USA wishes to respond to Aguila's objections, it shall submit a response no later than September 28, 2023. Otherwise, the Court will consider the objections unopposed." (ECF No. 11). On September 25, 2023, JPMorgan USA appeared in the case (ECF No. 12), and filed a letter urging the Court to decide the Application without JPMorgan USA joining the case but reserving its right to move to quash the Subpoena in the event that the Application was granted. (ECF No. 13). JPMorgan USA noted that, "[o]f course, if the Court prefers to hear from [JPMorgan USA] now, [JPMorgan USA] can make an appearance and file a brief setting forth its response to the applicant's objection to the R&R in further detail." (Id. at 1).

On September 27, 2023, after the case was reassigned, Judge Koeltl ordered that Aguila and JPMorgan USA appear for a conference.  (ECF No. 14).  At the conference, Judge Koeltl expressed to the parties that "the most reasonable way to proceed" would be for Aguila to serve the Subpoena on JPMorgan USA and for JPMorgan USA to "either respond to the [S]ubpoena or move to quash . . . without prejudice to any arguments that either JP[]Morgan [USA] or [Aguila] can make with respect to the validity of the [S]ubpoena or the permissibility of the [S]ubpoena under [§] 1782 or the Federal Rules of Civil Procedure."  (ECF No. 30 at 2–3).  Both parties consented to this approach.  (Id. at 3).  Accordingly, Judge Koeltl "dismissed as moot" the R&R and Aguila's objections (id. at 5), and set a briefing schedule for JPMorgan USA's Motion.  (Id. at 4–5; see ECF No. 15).

### 2.  The Motion

On October 20, 2023, JPMorgan USA filed the Motion (ECF No. 19), a memorandum of law in support (ECF No. 20), and the declarations of Abby Rudzin, counsel to JPMorgan USA in this action (ECF No. 21), and Lucas de Moraes Cassiano Sant'Anna, counsel to JPMorgan Brazil in the Brazil Proceeding (ECF No. 22).  JPMorgan USA argues that the Subpoena should be quashed because, inter alia:  (i) the Contemplated Proceedings are not qualifying proceedings under § 1782; (ii) Aguila cannot establish that JPMorgan USA has possession, custody, or control of the documents Aguila seeks; and (iii) the discretionary Intel[2] factors (the "Intel Factors") applicable to § 1782 applications weigh against Aguila.  (ECF No. 20).

[2] Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004).

On October 30, 2023, Aguila opposed the Motion, arguing that the Application and Subpoena satisfy the statutory requirements of § 1782 and the Intel Factors. (ECF No. 24). Aguila submitted declarations of Rafael Pimenta, counsel to Aguila in the Brazil Proceeding (ECF No. 25), and Raphael Carlos dos Santos Machado ("Mr. Machado"), a Brazilian computer engineer specializing in information security (ECF No. 26; see ECF No. 26-1 (Mr. Machado's resume)). Mr. Machado prepared a forensic report analyzing certain emails in Aguila's possession that employees of JPMorgan Brazil sent to Aguila in connection with Aguila's bids for the Assets. (ECF No. 26-2 (the "Machado Report")). The Machado Report analyzed seven such email messages (the "Emails") to determine their "origin IP and trajectory" and analyze Aguila's "hypothesis that [the E]mails received by Aguila [] were sent from the United States[.]" (Id. at 3; see id. at 5). The Machado Report found that the Emails were transmitted through the domain "jpmchase.net," which "belongs to the organization JPMorgan Chase Bank, National Association," headquartered in Wilmington, Delaware. (Id. 7). Ultimately, Mr. Machado concluded that:

> [u]sing rigorous digital forensics methodologies, our analysis revealed evidence providing that the emails in question were transmitted from servers owned by JPM Chase, with the domain (jpmchase.net). Further examination revealed that these servers are geographically situated in New York City, New York, USA. This geographic and proprietary information affirms the transmission of emails from the United States to a company in Brazil, supporting the claims made in this case.

(Id. at 17–18). Thus, Aguila argued, it met its burden to "set forth specific facts and evidence showing that JPMorgan USA has or is likely to have in its actual possession, custody, or control documents related to Aguila" and its bids for the Assets. (ECF No. 24 at 7).

On November 6, 2023, JPMorgan USA filed a reply, responding that the Machado Report is not competent evidence and does not establish JPMorgan USA's possession of the requested discovery. (ECF No. 27 at 6–8). Specifically, JPMorgan USA argues that Mr. Machado concluded

**SPA18**

only that the Emails were transmitted from servers belonging to "JPMorgan Chase Bank, National Association" ("JPMorgan Chase, N.A."), but did not offer evidentiary support for the contention that JPMorgan USA owns or controls servers belonging to JPMorgan Chase, N.A.  (Id. at 10).  JPMorgan USA notes that, as a matter of corporate structure, it is a separate and distinct entity from JPMorgan Chase, N.A., i.e., JPMorgan USA holds the stock of JPMorgan Chase, N.A., which, in turn, holds the stock of JPMorgan USA's subsidiaries.  (Id.; see ECF No. 20 at 8).  Therefore, argues JPMorgan USA, Aguila still fails to demonstrate that JPMorgan USA has possession, custody, or control over the documents Aguila seeks.  (ECF No. 27 at 9–11).

### III.     DISCUSSION

#### A.  Legal Standard

Under 28 U.S.C. § 1782(a), a federal district court may order any person or entity who "resides or is found" in the district "to produce a document or other thing for use in a proceeding in a foreign international tribunal . . . upon the application of any interested person."  The party making the application must demonstrate the following statutory requirements:  "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  Guo v. Deutsche Bank Sec., 965 F.3d 96, 102 (2d Cir. 2020).[3]

Unless the court prescribes otherwise, "the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

---

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated

28 U.S.C. § 1782(a).  This includes the requirement that the requested discovery be in the responding party's "possession, custody, or control."  Fed. R. Civ. P. 26(a)(1)(A)(ii); see In re Mun, No. 22 Misc. 163 (DLC), 2022 WL 17718815, at *2 (S.D.N.Y. Dec. 15, 2022).  With respect to related corporate entities, a parent has control over a subsidiary for discovery purposes when, for example, "the parent is 'responsible for the compliance, risk management, governance, and financial reporting operations' of the subsidiary, and there was 'substantial overlap between the management executives of the parent and the subsidiary.'"  In re Liverpool Ltd. P'ship, No. 21 Misc. 392 (AJN), 2021 WL 5605044, at *3 (S.D.N.Y. Nov. 4, 2021) (quoting Motorola Credit Corp. v. Uzan, 02 Civ. 666 (JSR), 2013 WL 6098388, at *3 (S.D.N.Y. Nov. 20, 2013)).  A parent may also have control over a subsidiary "if they share employees, facilities, office space, and utilize common practices and forums."  Id. (quoting In re Vivendi, S.A. Sec. Litig., 02 Civ. 5571 (RJH) (HBP), 2009 WL 8588405, at *4 (S.D.N.Y. July 10, 2009)).  The § 1782 applicant bears the burden of establishing control.  Id.

Provided that the statutory requirements are met, the court is "free to grant discovery in is discretion."  Optimal Invs. Servs., S.A. v. Berlamont, 773 F.3d 456, 460 (2d Cir. 2014).  Although the district court's discretion is broad, it must be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  Mangouras v. Boggs, 980 F.3d 88, 97 (2d Cir. 2020).  The Supreme Court has identified four discretionary factors—the Intel Factors—that a court considers when ruling on a § 1782 application:  "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for Section 1782(a) aid generally is not as

apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome." Id. at 97–98 (citing Intel Corp., 542 U.S. at 264–65).

As relevant here, § 1782 applications may be granted where the foreign proceeding has not yet been commenced. The contemplated foreign proceeding need not be "pending" or "imminent"; "rather, a § 1782 applicant 'must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.'" In re Hornbeam Corp., 722 F. App'x 7, 9 (2d Cir. 2018) (summary order) (quoting Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 123–24 (2d Cir. 2015)). To do so, the applicant must provide "reliable indications of the likelihood that proceedings will be instituted in a reasonable time." IJK Palm LLC v. Anholt Servs. USA, Inc., 33 F.4th 669, 677 (2d Cir. 2022).

**B. Application**

**1. The Statutory Requirements**

**a. JPMorgan USA is found in this District.**

The first statutory requirement is that "the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made." 28 U.S.C. § 1782(a). JPMorgan USA argues that Aguila fails to meet this requirement because, although JPMorgan USA is found in this District, the true "target" of the Application is JPMorgan

Brazil, which is not found in this District. (ECF No. 20 at 22). Aguila argues that it is neither seeking discovery from JPMorgan Brazil nor requesting that JPMorgan USA retrieve discovery from JPMorgan Brazil; rather, Aguila is only seeking "information that is in the actual possession, custody, or control of JPMorgan USA." (ECF No. 24 at 6–7).

Aguila is correct. JPMorgan USA is the Respondent in this case, Aguila is seeking discovery from JPMorgan USA only, and JPMorgan USA is headquartered and thus "is found" in this District. (ECF No. 20 at 22). That is all that is required under the first requirement of § 1782, and thus this requirement is satisfied.

### b.   The requested discovery is "for use" in a foreign proceeding.

The second statutory requirement is that "the discovery is for use in a foreign proceeding before a foreign or international tribunal." 28 U.S.C. § 1782(a). As noted, the movant need not show that the foreign proceeding is pending, but must present a concrete basis from which the Court can determine that the contemplated proceeding will be instituted in a reasonable time. (See § III.A, supra). JPMorgan USA argues that, inter alia, the contemplated TCU and MPF investigations do not qualify as "foreign proceeding[s] before a foreign or international tribunal" under § 1782, and that any civil suit against JPMorgan Brazil is not within Aguila's reasonable contemplation because it has not taken diligent steps to commence suit. (ECF No. 20 at 13–16). Aguila argues that the TCU and MPF investigations are qualifying foreign proceedings because § 1782's use of "tribunal" encompasses "administrative and quasi-judicial proceedings," such as the two Aguila contemplates. (ECF No. 24 at 10–11). Aguila also argues that it has taken diligent steps to prepare to commence the Contemplated Proceedings, including obtaining a copy of the

winning proposal for the sale of the Assets, and that it intends to commence the proceedings once it obtains the documents requested in this Application. (Id. at 11–12).

Aguila has satisfied this second statutory requirement. Aguila's contemplated civil lawsuit against JPMorgan Brazil in Brazil, if commenced, would qualify as a "foreign proceeding before a foreign or international tribunal." 28 U.S.C. § 1782(a). The Court disagrees with JPMorgan USA's assertion that Aguila's "failure to act" in the time since the Application was filed renders the lawsuit speculative. (ECF No. 20 at 13). To the contrary, Aguila alleges that it was improperly disqualified as a bidder for the Assets in late March 2022, and commenced this proceeding in August 2022, five months later. (ECF No. 1 at 1, 7). Aguila asserted in the Application and reasserts in opposition to the Motion that it fully intends to sue JPMorgan Brazil and Petrobras in Brazil, and that the reason it has not done so yet is because the requested discovery is essential to its potential claims in the civil action. (See ECF Nos. 1 at 26–28; 3 ¶¶ 31–37; 24 at 11–12; 25 ¶¶ 55–58). Aguila also articulates the legal theories on which it intends to rely to establish a claim for relief under Brazilian law. (See ECF Nos. 1 at 21–22; 3 ¶¶ 27–30, 32–35; 24 at 9–10; 25 ¶ 48). This is sufficient to establish that the civil lawsuit is within Aguila's reasonable contemplation. See Hornbeam, 722 F. App'x at 9–10 (affirming conclusion that foreign proceeding was reasonably contemplated where applicant "represented that it intended to initiate further litigation once it obtained additional information" and "articulated a theory on which it intended to litigate"); In re SPS I Fundo de Investimento de Acoes-Investimento no Exterior, No. 22 Misc. 118 (LAK), 2022 WL 17553067, at *10–11 (S.D.N.Y. Dec. 9, 2022) (holding that a contemplated proceeding was "more than just a twinkle in counsel's eye" where the applicant "provided a sworn statement from its Brazilian lawyer attesting to [the applicant's]

intent to initiate the contemplated proceeding and outlining its legal theories therein"); In re Bouka, 637 F. Supp. 3d 74, 90 (S.D.N.Y. 2022) (holding that, "[b]ecause [the applicant] had retained local counsel, laid out a basis for liability, and identified the factual basis of his claims, we find that the [contemplated] [p]roceedings are 'reasonably contemplated,' and thus the requested discovery would be 'for use' in a foreign proceeding"); In re Furstenberg Fin. SAS, No. 18 Misc. 44 (JGK), 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (holding that proceeding was reasonably contemplated where "petitioners have sworn th[ey] intend to file a criminal complaint in . . . Luxembourg . . . and have articulated a specific legal theory on which they intend to rely"), aff'd, 785 F. App'x 882 (2d Cir. 2019) (summary order).

The Court is unpersuaded by JPMorgan USA's alternative argument that the contemplated civil lawsuit does not satisfy § 1782 because it would be "quickly dismissed" as moot due to Petrobras' decision not to sell the Assets.  (See ECF No. 20 at 13–14).  JPMorgan USA has not provided authority for the proposition that, under Brazilian law, Aguila's claims against JPMorgan Brazil in connection with Aguila's bids for the Assets would be mooted by Petrobras' later decision not to sell the Assets.  Indeed, JPMorgan USA only argues that the contemplated civil suit would "likely" be dismissed on mootness grounds (see id. at 14), implicitly conceding that Aguila might state a viable claim for relief under Brazilian law.  This Court is not in a position to rule definitively that a Brazilian court would dismiss Aguila's claims, the merits of which are a matter for the Brazilian court.  See In re Pidwell, No. 21 Misc. 166 (ALC) (KHP), 2022 WL 192987, at *5 (S.D.N.Y. Jan. 21, 2022) (rejecting argument that § 1782 application should be denied because contemplated proceeding would be unsuccessful because court was "not in a position to prognosticate on the outcome of a foreign proceeding," which involved questions of foreign law);

# SPA24

Furstenberg, 2018 WL 3392882, at *5 (rejecting argument "to consider the merits of the foreign proceeding and determine whether the petitioners are likely to prove their damages"); see also Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099 (2d Cir. 1995) (explaining that "it is unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law"); In re Children's Inv. Fund. Found., 363 F. Supp. 3d 361, 377 (S.D.N.Y. 2019) (stating that "[the Court] will follow other courts in this district and decline to engage in speculation about how any of the Foreign Proceedings may be resolved"), abrogated in part on other grounds by, Guo, 965 F.3d at 104–09.

Accordingly, Aguila has satisfied the second statutory requirement.

### c.  Aguila is an interested party.

The third statutory requirement is that "the application is made by a foreign or international tribunal or interested person." 28 U.S.C. § 1782(a).  Aguila's contemplated civil suit against JPMorgan Brazil satisfies this requirement.  Aguila would be the plaintiff in that civil case, and would therefore qualify as an interested party.  See, e.g., In re Pishevar, 439 F. Supp. 3d 290, 303 (S.D.N.Y. 2020) (holding that "[p]etitioner will be the plaintiff in the contemplated civil lawsuit and, as such, is an 'interested person'").  JPMorgan USA does not contend otherwise, instead arguing only that Aguila would not be an interested party to the contemplated TCU and MBF proceedings.  (ECF No. 20 at 14–17).  Because the Court finds that the contemplated civil suit is within Aguila's reasonable contemplation and that the discovery sought here would be "for use" in that suit (see § III.B.1.b, supra), the Court need not determine whether Aguila would also be an interested party to the contemplated TCU and MBF proceedings.

# SPA25

Accordingly, Aguila has satisfied the three statutory requirements under § 1782, and the Court proceeds to analyze whether Aguila has demonstrated that JPMorgan USA possesses relevant documents and, if so, whether the Intel Factors militate in Aguila's favor.

**2.    Aguila has not demonstrated that JPMorgan USA possesses relevant documents.**

As noted, for Aguila to establish entitlement to a grant of discovery under § 1782, it must establish that JPMorgan USA has possession, custody, or control of the requested documents. (See § III.A, supra).  Aguila has not met this burden.

Aguila has not shown that JPMorgan USA participated in the Auction or the decisions to deny Aguila's bids for the Assets; rather, Aguila seeks documents from JPMorgan USA solely relating to the alleged activities and communications of individuals operating on behalf of its subsidiary, JPMorgan Brazil, and Petrobras.  (See ECF No. 4-1 at 13–14; see generally ECF No. 1). A parent-subsidiary relationship, however, is not dispositive of control over documents.  Indeed, other courts in this District have denied similar § 1782 applications seeking from JPMorgan USA discovery in the possession of its foreign subsidiaries.  See Mun, 2022 WL 17718815, at *2–3 (denying § 1782 application seeking from JPMorgan USA discovery in the possession of its English subsidiary, which acted as financial advisor for a Bermuda transaction, and holding that, "[b]ecause JPMorgan [USA]'s subsidiary controls and possesses the documents and not JPMorgan [USA] itself, the Petitioners' request to obtain this discovery from JPMorgan [USA] fails under the Federal Rules of Civil Procedure"); Liverpool, 2021 WL 5605044, at *3 (denying § 1782 application seeking from JPMorgan USA discovery in the possession of its Japanese subsidiary, and holding that, "[b]ecause Petitioner has not shown that JP[Morgan USA] 'exercises operational control' over [its Japanese subsidiary] or that the two 'operate as one entity,' the Court cannot conclude

that JP[Morgan USA] has control, possession, or custody over the requested discovery"); see also In re FourWorld Event Opportunities Fund, L.P., No. 22 Misc. 330 (JPO), 2023 WL 3375140, at *3 (S.D.N.Y. May 11, 2023) (granting JPMorgan USA's motion to quash subpoenas under § 1782 because "Respondent does not have possession, custody, or control of the discovery in question").

Aguila theorizes that JPMorgan USA is likely to be in possession of documents relevant to the Contemplated Proceedings because certain "communications were sent under JPMorgan US[A]'s domains . . ." (ECF No. 3 ¶ 48; see ECF Nos. 1 at 8–9 ("Aguila has strong reason to believe that JPMorgan USA has possession, custody, or control over the evidence relevant to the[ Contemplated Proceedings] because all communications Aguila has received from JPMorgan Brazil have been exchanged with @jpmorgan.com and @j[pm]chase.com domains and with signature disclaimers that link to the jpmorgan.com website . . ."); 25 ¶ 56 ("Aguila know[s] that JPMorgan US[A] is in possession of the documents Aguila can [] use[] in the contemplated proceedings because communications about the [Auction] were sent under JPMorgan US[A]'s domains . . ."). Aguila relies on the Machado Report, which analyzed the Emails to determine the locations of the domains from which they were sent. (See ECF No. 26-2). The Machado Report contains a trace analysis of one of the Emails, concluding that the "source server" is "SEGEX092.exchad.jpmchase.net". (Id. at 6). Mr. Machado then opines that "[t]he domain jpmchase.net belongs to the organization JPMorgan Chase, [N.A.]." (Id. at 7). Although Mr. Machado appears to associate the "ISP" for various "origin server IPs" with JPMorgan USA, he does not state what conclusions can be drawn from that association. (See id. at 8, 10–11, 13–14, 16–17).

The Machado Report does not establish that JPMorgan USA has possession, custody, or control over the Emails, much less permit the inference that JPMorgan USA has possession, custody, or control over other communications that would be responsive to the Subpoena or relevant to the Contemplated Proceedings.  First, although the Machado Report represents that one or more of the Emails were transmitted under the domain "jpmchase.net," which supposedly "belongs" to JPMorgan Chase, N.A. (ECF No. 26-2 at 5–6), the record shows that JPMorgan Chase, N.A. is a separate and distinct corporate entity from JPMorgan USA, i.e., JPMorgan USA is a "financial holding company" that "holds the stock of JPMorgan Chase[,] N.A."  (ECF Nos. 20 at 8; 27 at 10).  As set forth above, a corporation is not automatically deemed to be in possession, custody, or control of documents possessed by its subsidiaries, or vice-versa.  (See § III.A, supra).

Second, simply because JPMorgan USA is associated with the underlying "ISP" for the Emails does not compel the conclusion that JPMorgan USA exercises control over the servers that house the Emails or other responsive documents.  The issue here is whether Aguila has presented facts sufficient for the Court to draw the inference that JPMorgan USA possesses responsive discovery, not whether Aguila has demonstrated some ancillary connection between JPMorgan USA and the Emails.  In the absence of any such facts, Aguila has not met its burden.

Third, Aguila's statement in opposition to the Motion that the Machado Report "determined that the emails Aguila attached to and referenced in its Application were transmitted from JPMorgan USA's servers located in New York, New York" misrepresents what the Machado Report actually states.  (ECF No. 24 at 5).  The Machado Report does not conclude that JPMorgan USA maintains servers in New York that house the Emails.  Instead, the Machado Report states that "[t]he geographic location of the IPs of the email origination servers" is in New York, and that

the servers are "owned by [']JPM Chase[']"—an undefined entity.  (ECF No. 26-2 at 18).  The Court cannot discern from the Machado Report to which corporate entity Mr. Machado is referring by "JPM Chase," and, even if he meant to refer to JPMorgan USA, the Court would not accept that conclusion because it is not supported by any facts or analysis.  Nowhere does Mr. Machado analyze which corporate entity owns the servers containing the Emails (see ECF No. 26-2), and on review of Mr. Machado's resume and credentials, the Court cannot conclude that he would be qualified to opine on that topic.  (See ECF No. 26-1).

Ultimately, Aguila has failed to demonstrate that JPMorgan USA has possession, custody, or control over the Emails or other documents that would be responsive to the Subpoena.  Courts in this District routinely deny § 1782 applications—and grant parallel motions to quash—where applicants fail to demonstrate the requisite degree of control.  See In re Boustany, No. 23 Misc. 203 (LGS), 2024 WL 473569, at *2 (S.D.N.Y. Feb. 7, 2024) (denying § 1782 application seeking documents from JPMorgan USA relating to the activities of its foreign subsidiaries because "[u]ltimately, [] it is Petitioner's burden to show that those documents are in the Banks' control[,]" and "Petitioner's arguments for the Banks' control of the sought-after materials are based almost entirely on conjecture"); FourWorld, 2023 WL 3375140, at *3 (granting motion to quash § 1782 subpoena seeking documents from JPMorgan USA relating to the activities of its foreign subsidiary because "there is no evidence supporting a conclusion that [the subsidiary] and [the parent corporation] operate as one . . ."); Mun, 2022 WL 17718815, at *2–3 (denying § 1782 application seeking documents from JPMorgan USA relating to the activities of its foreign subsidiary because "JPMorgan [USA's] subsidiary controls and possesses the documents and not JPMorgan [USA] itself," and holding that "[a] parent company's limited involvement with its

subsidiary's operations, as described in the [r]eport, is insufficient to establish the necessary control"); <u>Liverpool</u>, 2021 WL 231449, at *3 (same, finding that JPMorgan USA could not be ordered to produce information in the possession of a foreign subsidiary based solely on allegations that it "[held] itself out to the public as significantly intertwined" with the foreign subsidiary, "provide[d] financial services" in the foreign jurisdiction through the subsidiary, and shared an officer"). The same result is warranted here.

Accordingly, because Aguila has not met its burden of establishing that JPMorgan USA has possession, custody, or control over the documents responsive to the Subpoena, I respectfully recommend that the Motion be GRANTED, the Subpoena be QUASHED, and the Application be DENIED.

**3.  Only two of the discretionary factors favor granting the Application.**

Because Aguila has not established possession, custody, or control, "[t]he Court's analysis need not venture further." <u>FourWorld</u>, 2023 WL 3375140, at *3. If the Court were to proceed, however, only two discretionary <u>Intel</u> factors weigh in Aguila's favor.

**a.  The first Intel factor**

The first <u>Intel</u> factor contemplates whether "the person [or entity] from whom discovery is sough is a participant in the foreign proceeding, in which case the need for Section 1782(a) aid generally is not as apparent." <u>Mangouras</u>, 980 F.3d 88 at 97. Aguila alleges that JPMorgan USA will not be a party to the Contemplated Proceedings, which solely concern the alleged conduct of JPMorgan Brazil and Petrobras. (ECF No. 1 at 30–31). Although JPMorgan USA is the alleged parent company of JPMorgan Brazil, this does not alter the analysis because "[p]arent companies of non-U.S. participants in foreign proceedings are separate legal entities for purposes of

Section 1782 applications." In re Pidwell, No. 21 Misc. 166 (ALC) (KHP), 2022 WL 192987, at *5

(S.D.N.Y. Jan. 21, 2022) (citing In re Top Matrix Holdings Ltd., No. 18 Misc. 465 (ER),

2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020)); see In re Evenstar Master Fund SPC,

No. 20 Misc. 418 (CS) (JCM), 2021 WL 3829991, at *11 (S.D.N.Y. Aug. 27, 2021) ("entities who are

participants in foreign proceedings are separate legal entities from their subsidiaries and affiliates

for the purpose of Section 1782 motions"), aff'd, 2021 WL 5498283 (S.D.N.Y. Nov. 23, 2021). The

Court rejects JPMorgan USA's argument that, because the "real party" from whom the documents

are sought is JPMorgan Brazil, this factor weighs against Aguila. (ECF No. 20 at 24). Aguila has

made clear that it is not seeking documents from JPMorgan Brazil—undoubtedly a participant to

the contemplated civil suit—and that it is only seeking production of documents from JPMorgan

USA. (See § III.B.1.a, supra).

For the same reason, the Court also rejects JPMorgan USA's argument that this factor

weighs against Aguila because Aguila could seek the same documents in Brazil, and that the

Application is merely an attempt to make JPMorgan USA "somehow compel its foreign subsidiary

in Brazil to send that subsidiary's records out of Brazil to the U.S. so that [JPMorgan USA] can

produce them to" Aguila. (ECF No. 20 at 23–24). Again, the Application only seeks documents

from JPMorgan USA, not JPMorgan Brazil, and even if the discovery requested here from

JPMorgan USA may be in JPMorgan Brazil's possession in Brazil, this is not relevant to the first

Intel factor. See Top Matrix, 2020 WL 248716, at *5 (holding "[t]hat [the] information possessed

by Credit Suisse USA is also likely possessed by Credit Suisse in Switzerland is not relevant"); see

also In re Safra, No. 21 Misc. 640 (GHW) (JLC), 2022 WL 3584541, at *4 (S.D.N.Y. Aug. 22, 2022)

(rejecting argument that the first Intel factor weighed against applicant because discovery could

be compelled in foreign jurisdiction, noting the Second Circuit's rejection of a "quasi-exhaustion" requirement for § 1782 applications).

Thus, because JPMorgan USA would not be a "participant" in the Contemplated Proceedings, the first Intel factor weighs in Aguila's favor.

### b. The second Intel factor

The second Intel factor concerns "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Mangouras, 980 F.3d at 97–98. "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance," and a court "should deny discovery on the basis of lack of receptiveness only where it is provided with 'authoritative proof that the foreign tribunal would reject evidence obtained with the aid of section 1782.'" In re Atvos Agroindustrial Investimentos S.A., 481 F. Supp. 3d 166, 176–77 (S.D.N.Y. 2020) (quoting Euromepa, 51 F.3d at 1100–02).

This factor weighs in Aguila's favor because "[t]here is no evidence before this Court suggesting that Brazil or Brazilian Courts are unreceptive to requests by U.S. persons for judicial assistance [and] Courts in this district recently have granted requests for section 1782 discovery for use in Brazilian proceedings." Ex parte Abdalla, No. 20 Misc. 727 (PKC), 2021 WL 168469, at *5 (S.D.N.Y. Jan. 19, 2021) (collecting cases). Further, Aguila has submitted declarations from its Brazilian counsel stating that "there is no indication that a Brazilian court or authority would not be receptive to the documentary and testimonial evidence sought by Aguila through its Application. Such evidence is likely admissible in the [] Contemplated Proceedings."

(ECF Nos. 3 ¶ 51; ECF No. 25 ¶ 59).  Thus, the second Intel factor weighs in Aguila's favor.  See Associação dos Profissionais dos Correios v. Bank of N.Y. Melon Corp., No. 22 Misc. 132 (RA) (KHP), 2022 WL 4955312, at *7 (S.D.N.Y. Oct. 4, 2022) (holding that the second Intel factor weighed in the applicant's favor where the applicant "submitted an affidavit from Brazil counsel explaining that the Brazilian Court would be receptive to discovery obtained through [the] Section 1782 process"), remanded on other grounds by, 2023 WL 3166357, at *1 (2d Cir. Mar. 28, 2023); Matter of Degens, No. 20 Misc. 237 (JGK) (RWL), 2020 WL 4252725, at *4 (S.D.N.Y. July 24, 2020) (same, citing to Brazilian counsel's declaration to support that "[t]here is no reason to believe the Brazilian Court would not be receptive to evidence gathered under § 1782, and no Brazilian rule, policy, or law prohibits or discourages the Brazilian Court from considering such evidence").

### c.  The third Intel factor

The third Intel factor asks "whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Mangouras, 980 F.3d at 98.  Circumvention exists if the application is an attempt to evade discovery procedures in the foreign jurisdiction or where the record indicates that the application is otherwise a "bad faith endeavor to misuse Section 1782." Bouka, 637 F. Supp. 3d at 90; see In re Hansainvestment Hanseatische Inv.-GmbH, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018) (holding that the third Intel factor weighed in the applicant's favor absent showing of "any improper or bad faith evasion of German procedures").

JPMorgan USA's argument that this factor weighs against Aguila because Aguila "has already sought discovery from Petrobras in civil court, and the Brazilian appellate court has rejected the request" (ECF No. 20 at 26), is without merit.  Aguila's request for discovery in Brazil

was made to Petrobras, not JPMorgan USA, and appears to have only sought production of a recording of the Videoconference, as opposed to the more expansive discovery sought here. (See ECF Nos. 22-2; 24 at 16). Aguila's unsuccessful attempt to obtain one piece of discovery from a different entity in Brazil does not establish that this § 1782 application seeking different discovery is an attempt to circumvent Brazilian proof-gathering restrictions.

That being said, Aguila's request for discovery concerning the involvement of JPMorgan Brazil and Petrobras in a Brazilian transaction without demonstrating that JPMorgan USA has a connection to the transaction or has possession, custody, or control over documents responsive to the Subpoena suggests that Aguila is on a fishing expedition and may be misusing the § 1782 device. Thus, the third Intel factor weighs against Aguila.

### d.  The fourth Intel factor

Finally, the fourth Intel factor considers "whether the request is unduly intrusive or burdensome." Mangouras, 980 F.3d at 98. This factor is measured by the standards of Federal Rule of Civil Procedure 26. See In re XPO Logistics, Inc., No. 15 Misc. 205 (LGS), 2017 WL 6343689, at *4 (S.D.N.Y. Dec. 11, 2017) (citing Mees v. Buiter, 793 F.3d 291, 302 (2d Cir. 2015)). As applied to § 1782 applications, Rule 26 "contemplates that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." Associação, 2022 WL 4955312, at *8. The "proportionality analysis depends on the relevance of the information sought—and, in the case of a § 1782 petition, relevance is assessed with regard to the foreign proceeding." Catalyst Managerial Servs., DMCC v. Libya Africa Inv. Portfolio, 680 F. App'x 37, 39 (2d Cir. 2017) (summary order).

# SPA34

Here, although the Court agrees with Aguila (and disagrees with JPMorgan USA's arguments to the contrary (see ECF No. 20 at 27)) that the Subpoena seeks discrete categories of documents narrowly tailored to the relevant timeframe—February 2021 to the present—that are relevant to its allegations against JPMorgan Brazil and Petrobras (ECF No. 4 at 5, 13–14), for the reasons discussed above, Aguila has not shown that JPMorgan USA has possession, custody, or control of these documents.  Therefore, Aguila's requests are unduly burdensome and intrusive, and this factor also weighs against Aguila.  See In re Lloreda, 323 F. Supp. 3d 552, 560 (S.D.N.Y. 2018) (denying § 1782 application where request was unduly burdensome and applicant had not shown possession, custody, and control).

**IV.     CONCLUSION**

Accordingly, for the reasons sets forth above, I respectfully recommend that the Motion be GRANTED, the Subpoena be QUASHED, and the Application be DENIED.

Dated:      New York, New York
             February 29, 2024

_____
SARAH L. CAVE
**United States Magistrate Judge**

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. <u>See also</u> Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Koeltl.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).